(128 App. Div. 621.)

FARMERS' LOAN & TRUST CO. v. McCARTHY et al.

(Supreme Court, Appellate Division, First Department. November 20, 1908.)

WILLS (§ 812*)—ABATEMENT—LIABILITY FOR DEVASTAVIT OF EXECUTOR.

 Where a testator's intent was that specific legacies should be first paid, and that only the residue should be distributed to residuary legatees, and the executor, after paying some of the specific legacies, misappropriated part of the estate to his own use, what is left must be applied to payment of the specific legacies before the residuary legatees can receive anything.

 [Ed. Note.—For other cases, see Wills, Cent. Dig. § 2108; Dec. Dig. § 812.*]

 Scott, J., dissenting.

Appeal from Trial Term, New York County.

Action by the Farmers' Loan & Trust Company, as trustee, etc., against James R. McCarthy and others, for the judicial settlement of plaintiff's account as trustee. From an interlocutory judgment, certain defendants appeal. Reversed, and new trial ordered. See, also, 107 N. Y. Supp. 928.

Argued before PATTERSON, P. J., and CLARKE, HOUGHTON, McLAUGHLIN, and SCOTT, JJ.

I. Newton Williams, for appellants.

Hastings & Gleason (Merwyn MacKenzie, of counsel), for respondents Neifert and others.

Turner, Rolston & Horan (James F. Horan, of counsel), for respondent Farmers' Loan & Trust Co.

CLARKE, J. Amanda E. McCarthy died leaving a last will and testament under which she bequeathed: To Amanda E. Crites, $1,000; Amanda E. Hauck, $1,000; James R. McCarthy, $1,000; Alfred C. McCarthy, $1,000; David A. Crites, $1,000; Caroline Bailer, $1,000; Noah Crites, $3,000; Mrs. James Jones, $2,000; and to others some legacies of specific personal property. The will provided that:

"All the bequests hereinbefore mentioned shall be paid in full and all taxes or other charges on said bequests shall be paid by my executors hereinafter mentioned out of my residuary estate. All the rest, residue and remainder of my estate, both real and personal of whatsoever nature, kind or description, I give, devise and bequeath to my executors hereinafter named to divide the same into three equal parts, to hold one equal part thereof, invest the same and to pay the income of the rents, issues and profits therefrom semi-annually to James H. Walters during the term of his natural life and upon his death the said part I give, devise and bequeath to Hattie A. McCarthy and my sister Emiline Bittenbender equally, share and share alike, or to the survivor of them. To hold one equal part, invest the same and out of the rents, issues and profits thereof to pay Hattie A. McCarthy, daughter of Jennie Jones, the sum of fifteen dollars per week until she arrives at the age of thirty years, at which time she shall be paid by my said executors out of the said part one-third of the principal of the trust created for her benefit. Upon her arrival at the age of thirty-five years, I direct that my executors pay to her the second third of the trust created herein for her benefit. At the time she arrives at the age of forty years the balance of said trust fund and accumulations thereon shall be paid forthwith. * * * I hereby give, devise and bequeath the third part of the rest, residue and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

remainder of my estate not hereinbefore disposed of to my beloved sister, Emiline Bittenbender, should she survive me, and in the event of her decease prior to my death, I give the same to her heirs at law. * * * I authorize my executors for the execution of this my last will, to sell and dispose of all my property, whether real or personal, or any part thereof, at public or private sale * * * for the benefit of my said estate."

She appointed Albert J. Wise her executor. He sold three pieces of real property and received therefor about $67,000. He paid two legacies of $1,000 each in full, and $500 on account of the legacy of $3,000. He misappropriated to his own use the rest of the money and died insolvent. Thereafter the Farmers' Loan & Trust Company was appointed trustee under the will, and Amanda E. McCarthy was appointed administratrix with the will annexed. The plaintiff, as trustee, received $5,306.98, being the proceeds of the sale of the remaining piece of real estate sold by direction of the court; $715.69, refund payment from the comptroller over payment of transfer tax; $18.34, balance of the account standing in the name of the estate of A. E. McCarthy in the Knickerbocker Trust Company; $1, found in a safe deposit box; received for rents and as interest, $318.14; and the further sum of $187.50 interest on a bond of one Otto J. Schultz for $2,500 payable to decedent secured by a mortgage.

This action was brought to take the account of the trustee, construe the will, and to direct the plaintiff as to what it should do with the funds in its hands. The learned Special Term decided: That by the will the real property was converted into personalty for all purposes of administering the estate; second, that the loss occasioned by the devastavit should be apportioned ratably between all the legatees, specific, general, or residuary, whose claims remained unpaid; and that the specific legatees who had received their legacies should not be required to contribute to the fund.

I am inclined to think that this solution of the problem presented is not correct. I think every line of the will and the general propositions of law require that the specific legacies be paid before the residuary legatees receive anything, and that the devastavit does not affect the situation.

In Mills v. Smith, 141 N. Y. 262, 36 N. E. 178, a trust fund was created by the will of $20,000 for certain purposes. The trust fund was in the hands of the executors as required by the will. The rest of the estate was distributed among the residuary legatees. The trust fund was dissipated. The court said:

"This action is simply an attempt to fasten upon the distributees of testator's residuary estate the responsibility for the subsequent default of the executors, as trustees for plaintiff's father. That cannot be done. Where the loss of a fund is due to the waste or misconduct of the executor and trustee, he and his estate alone can be looked to. No claim for contribution arises against residuary legatees in such a case. They are liable to refund in a case where, having been paid from the estate, it is discovered that there is a deficiency of assets for distribution under the will, caused by the diminution of the estate through the premature payment of legacies. * * * In the absence * * * of any proof to show that that fund was non-existent in the executor's hands and never was set apart and held as a trust, the plaintiff is without sufficient ground for an action against the distributees of the residuary estate to compel them to refund."

In Buffalo Trust Company v. Leonard, 154 N. Y. 141, 47 N. E. 966, the action was to recover moneys prematurely paid to a residuary legatee by a former executor. By decedent's will she gave certain pecuniary legacies to two children; the remainder of the estate to the defendant. The executor received into his possession moneys to an amount more than sufficient to pay the specific legacies and to leave a surplus greater than was in fact received by Leonard, the defendant; but when, by proceedings in the Surrogate's Court, the executor was required to pay to the guardian of the infants $3,600 in full for their legacies, he was discovered to be insolvent, and he had absconded. Prior to this time, however, he had paid to Leonard, as residuary legatee, the sum of $5,000 without authority or decree of the court. Said the court:

"It is not disputed that, as between such a legatee and the residuary legatee, the former is entitled to receive his legacy in full before the latter is entitled to anything. * * * Where the question arises between general or specific legatees, and the endeavor is to compel a refunding on the part of one who has been paid his legacy, its solution depends upon considerations which are not applicable to a case where the funds are pursued into the hands of a residuary legatee. If a legatee has been successful in getting his legacy paid to him, and the estate in the executor's hands was sufficient to pay all legacies at the time, a subsequent devastavit by the executor, through which there occurs a deficiency of assets wherewith to pay the other legatees, will not justify an action to compel a refunding by the legatee who has received his legacy. That would be because the payment itself to the legatee was not a devastavit and because the law would throw its protection around the more diligent legatee. * * * Such a right to compel a refunding would only exist in a case where the assets were not sufficient to pay all the legacies at the time of the payment to the particular legatee. Where the case is between a general legatee and the residuary legatee, I can imagine of no defense to the latter's liability to refund in case of a premature payment of moneys, where the former is without fault in the matter. * * * The residuary legatee is entitled to nothing until all debts and other legacies are paid."

Taking these two cases together, it would seem to be the law of the state that, where a trust fund had been set aside, and after that setting aside the residuary legatees receive what they were entitled to, and then there is a devastavit, there is no right to recover from the residuary legatees; but if the fund had not been set aside and appropriated to the trust estate, and a residuary legatee had been paid, and subsequently there was a devastavit, then said residuary legatee would be compelled to refund to pay the specific legacies, upon the ground that the specific legatees must first be paid. Reasoning by analogy, I come to the conclusion, when an estate has been so depleted by the devastavit of an executor or trustee that there are not funds enough to pay the specific legatees in full, whatever there is must be devoted to the payment of such legatees to the exclusion of the residuary legatees. There is no residuary estate to be distributed. I see no reason why the wrongful acts of the executor should destroy the plain and evident intent of the testator. The testator's intent was that the specific legacies should be first paid. and that only the residuary should be distributed to those named as residuary legatees. So careful was she that the sums specified should be paid in full to the first objects of her bounty that she provided that "all the bequests hereinbefore.

mentioned shall be paid in full and all taxes or other charges on said bequests shall be paid * * * out of my residuary estate." If the estate was only large enough, in the first instance, to pay the specific legacies, of course, there would be no residue to distribute. Such is now the case, and that order of payment provided by the testator seems to me to be the only one to be administered by the courts.

If I am right, it follows that the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellants to abide the event.

PATTERSON, P. J., and McLAUGHLIN and HOUGHTON, JJ., concur. SCOTT, J., dissents.