four days later, and which were at no time tendered to the county treasurer or to any person at any time authorized to have the custody of the moneys. In State v. Mutual Life Insurance Co., 175 Ind. 59, 93 N. E. 213, 42 L. R. A. (N. S.) 256, it appears that by the tax laws of the state of Indiana each of the foreign insurance companies doing business in that state was required to report semiannually to the Auditor of the state the gross amount of receipts received within the state for insurance premiums, and at the time of making such report "to pay into the treasury of the state" 3 per cent. of such receipts, and providing, in the event of failure to make such report, a penalty to be recovered in an action in the name of the state of Indiana on the relation of the Auditor of the state to revoke the authority of such defaulting company to do business within the state. It appears that for a long series of years the defendant and other insurance companies, as well as the State Auditor, had acquiesced in construing the statute as requiring payment to be made into the hands of the State Auditor, and that payment had been made accordingly, and that the various auditors had turned such money into the state treasury until the years 1904 and 1905, when the Auditor then in office converted to his own use a portion of such moneys paid to him. The court held that the defendant was chargeable with knowledge of the scope of the official authority of the Auditor, that he had no authority to receive these moneys on behalf of the state, and that the Auditor must be held to have received the moneys in his individual capacity as agent of the defendant and that the departmental construction of years to the effect that payment to the Auditor was payment to the state availed the defendant nothing, and that it must again pay the moneys.

While the 10 per cent. now amounts to a considerable sum, the statute vests no discretionary power in the court or the right to grant equitable relief, as the appellant suggests.

The order of the Special Term denying the application for a writ of mandamus must be affirmed. All concur.

---

STURGES & BURN MFG. CO. v. AMERICAN SEPARATOR CO.

(Supreme Court, Appellate Division, Third Department.  July 8, 1913.)

1. SALES (§ 81*)—BREACH OF SELLER—RESCISSION—"AS SOON AS POSSIBLE."
    Where goods were ordered to be delivered as soon as possible, which means within a reasonable time, and the parties did not make time of the essence of the contract, mere delay on the part of the seller in furnishing the goods will not warrant the buyer in rescinding.

    [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 217–223; Dec. Dig. § 81.*

    For other definitions, see Words and Phrases, vol. 1, pp. 528, 529.]

2. SALES (§ 179*)—ACCEPTANCE—WAIVER OF RIGHT TO RESCIND.
    Where the buyer, after the seller had long delayed delivery of goods which were ordered to be sent as soon as possible, accepted a large part

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the goods, the acceptance without objection was a waiver of the buyer's right to a rescission, and rendered him liable for the payment for the remainder of the goods which had to be manufactured.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 456–468; Dec. Dig. § 179.*]

3. APPEAL AND ERROR (§ 1195*)—LAW OF CASE.

A decision as to the effect of a letter written by the buyers of personal property rendered on a former appeal becomes the law of the case, and is binding on a subsequent trial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4661–4665; Dec. Dig. § 1195.*]

Appeal from Trial Term, Chenango County.

Action by the Sturges & Burn Manufacturing Company against the American Separator Company, which counterclaimed. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

See, also, 144 App. Div. 872, 129 N. Y. Supp. 210.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

T. B. & L. M. Merchant, of Binghamton, for appellant.

Julien Scott, of Bainbridge (Hubert C. Stratton, of Norwich, of counsel), for respondent.

LYON, J. In each of the months of January, February, and March, 1906, the defendant, which was engaged in the business of manufacturing and selling cream separators at Bainbridge, N. Y., gave to the plaintiff, which was engaged in the business of manufacturing sheet metal specialties, at Chicago, Ill., an order for the manufacture of 5,500 sets of covers for separators of the two sizes known as No. 1 and No. 2. The order of January 11th was for 3,000 sets of covers divided equally between sizes 1 and 2, the order of February 6th was for 500 sets of No. 1 covers, and the order of March 20th was for 2,000 sets of covers, 1,000 of each size. Each order specified shipment by freight to defendant at Bainbridge, the first two orders asking shipment at once. The March order asked for shipment as soon as possible.

In acknowledgment of this last order plaintiff wrote defendant as follows:

"Chicago, 3/22/06.

"Gentlemen: Your favor of the 20th inst., enclosing order No. 679 for No. 1 and No. 2 covers complete with floats is received and shall have prompt attention. If you have occasion to write about this please refer to our order No. 11,441. Thanking you very kindly for this remembrance, we are,

"Very truly yours,        Sturges & Burn Mfg. Co., By E. B. H."

Several letters and telegrams from defendant to plaintiff urging prompt or immediate shipment were offered in evidence, but in none of them prior to that of August 6, 1906, was there any suggestion of a cancellation by defendant of any part of the orders, or of the fixing

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of a time limit for the filling of the orders. August 6, 1906, the defendant wrote the plaintiff as follows:

"Aug. 6, 1906.

"Sturges & Burn Mfg. Co.,
  "Harrison & Green Sts.,
    "Chicago, Ill.
  "Gentlemen: We are in receipt of your invoice of Aug. 4th, covering 500 sets of No. 2 covers. Owing to the delay in filling our orders, this will be all the No. 2 covers we see our way clear to use, at least for the present, whilst in regard to No. 1 covers, we could handle about 500 sets more of that size than you have so far invoiced us with. Therefore, over and above this amount, we will ask you to cancel our orders. In other words, all that we wish you to ship us is 500 sets of No. 1 covers until such time as we place another order with you.
    "Very truly yours,                    American Separator Co."

Subsequent to the receipt of this letter on August 8th, and down to and including August 30th, plaintiff continued to ship separator covers to defendant, which defendant accepted and paid for without objection, the shipments between and including those dates aggregating 1,732 sets of covers, and making a total of 4,438 sets of the 5,500 sets of covers embraced in the three orders, and completing the filling of the January and February orders, and nearly one-half of the March order. On September 8th and 19th plaintiff made shipments of covers, the number of sets of which is not shown, but the same were sufficient to amount at the contract price to $760, leaving yet to be shipped in order to furnish all the covers contracted for approximately 300 sets. The said shipments of September 8th and 19th duly reached the railroad station at Bainbridge, and defendant was notified of that fact, but refused to pay the freight charges thereon or to accept the property, and the same was subsequently sold by the railroad company to pay the freight charges.

So far as the record discloses, no correspondence was had between the parties hereto subsequent to said letter of August 6th until October 22, 1906, when the plaintiff wrote the defendant as follows:

"10-22-'06

"American Separator Co., Bainbridge, N. Y.: We are enclosing herewith invoice for separator covers which we have packed and hold subject to your order and which we respectfully request you to give us shipping directions for. There will also be other shipments and for these we will be glad to have you give us shipping instructions."

No such shipping instructions were ever given by defendant to plaintiff, and plaintiff completed a sufficient number of sets of covers to fill the balance of said orders, and is holding them subject to the order of defendant.

The summons in this action was issued in May, 1908. The answer denied liability to plaintiff on account of plaintiff's alleged failure to manufacture and deliver said covers within a reasonable time, and also interposed a counterclaim for loss sustained by defendant by reason of such failure on the part of plaintiff, as well as by reason of defendant having thereby been compelled to procure elsewhere a portion of the covers at an additional expense. A jury was waived and the case tried by the court. The trial justice found the facts prac-

tically as above detailed; also that the said orders and acceptances constituted the contracts between the parties and obligated plaintiff to manufacture and deliver the covers with reasonable promptness; that a reasonable time for the performance of the March contract after the receipt of the material therefor on June 1st and 21st did not exceed 40 working days; that plaintiff began making deliveries on the March contract August 21st, shipping during the 10 days between that date and August 30th, both dates inclusive, 936 sets of covers; that the refusal of defendant to accept the September shipments, and any further delivery of covers, was upon the ground that by the delay in filling said orders and making shipments the plaintiff had failed to perform its contract. The conclusions of law reached by the trial justice, so far as is material to consider them at this time, were that the contract created by the order of March 20th and the acceptance of March 22d required shipments of covers by plaintiff to defendant to be made as soon as possible; that the plaintiff did not perform either of said three contracts within a reasonable time, that the defendant had the right to rescind the March contract because of the unreasonable delay of the plaintiff in performing the same, and that defendant was entitled to judgment dismissing the complaint, and awarding defendant damages against the plaintiff for the additional sum which the defendant had been compelled to pay for the covers which it had bought elsewhere. It is from the judgment entered in accordance with such decision that this appeal has been taken.

[1] We cannot agree with the conclusion of the learned trial court that the defendant had the right to rescind the March contract because of unreasonable delay of the plaintiff in performing the same. Where an act is to be performed within a reasonable time, time is not of the essence of the contract, and, unless it be made so by the subsequent acts of either of the parties, the delay of the plaintiff in furnishing an article contracted for furnishes no defense to an action brought to recover the contract price therefor. Courts do not allow a rescission of the contract for mere delay in performance, unless the parties have made time of the essence of the contract. Taylor v. Goelet, 208 N. Y. 253, 101 N. E. 867. The record discloses no act of either party subsequent to making the March contract which made or tended to make time of the essence of such contract. Moreover, it has been held that an agreement to manufacture and deliver articles "as soon as possible" means within a reasonable time. Hinds v. Kellogg (Com. Pl.) 13 N. Y. Supp. 922, affirmed 133 N. Y. 536, 30 N. E. 1148.

[2] However, assuming that "as soon as possible" does not mean within a reasonable time, but that it calls for the doing of the act with all possible expedition, as was held in Sentenne v. Kelly, 59 Hun, 512, 13 N. Y. Supp. 529, yet the defendant having permitted the plaintiff to continue to perform the March contract by manufacturing and delivering on and between August 21st and 30th, 938 sets of covers which the defendant accepted and paid for without objection, and having allowed the plaintiff to continue to expend time and money in completing the manufacture then under way of the remaining covers called for by the March contract without notifying plaintiff of its intention

to refuse acceptance thereof cannot now plead delay in the manufacture and delivery of such remaining covers as a defense to this action. Hinds v. Kellogg, supra; Dunn v. Steubing, 120 N. Y. 232, 24 N. E. 315. In the latter case time was expressly made of the essence of the contract, yet it was held that, while upon plaintiff's failure to perform by the day fixed defendant might have insisted upon his strict legal rights and thus put an end to the contract, having permitted plaintiff to continue the performance, he could not insist on the delay as a defense to the action. Nor is there any injustice in the application of this principle to the case at bar. In or about August of the preceding year the defendant had ordered manufactured by plaintiff 2,200 sets of covers which were delivered to and accepted by defendant in or about the month of November for use by defendant in its January and February sales. So far as the evidence discloses, the defendant did not at any time inform the plaintiff of its intention to make such changes in the form of its separators to be manufactured the following year as would require a different style of cover, and in fact defendant's president testified:

"We took steps to change the model of our separator after the close of the season, I should say somewhere about August or September, 1906."

It seems probable that plaintiff, mindful of its delivery of covers to defendant the preceding November, concluded that defendant wanted covers for its next year's trade, which defendant's president testified was at its height from January to April and practically stopped about July 1st, and which he had never known to run later than August 1st, and that relying upon such conclusion plaintiff completed the covers, all of which plaintiff's general manager testified were nearly finished early in August and were then in the assembling room.

[3] Nothing need be said regarding the effect of the letter of August 6th in view of the holding of this court on the prior appeal that the acceptance of the covers by defendant after the rescission was equivalent to a revocation of it, and an unequivocal notice of an election to abide by the contract. Such also is the position of the defendant upon this appeal.

The judgment appealed from must be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.