SAMUEL ERDREICH, Respondent, *v.* LEOPOLD ZIMMERMANN and Others, Copartners Doing Business under the Firm Name and Style of ZIMMERMANN & FORSHAY, Appellants.

First Department, January 16, 1920.

Sale — purchase of German war bonds represented by certificates — transaction amounting to executed sale prior to entrance of this country into war — when vendee cannot rescind and recover consideration — recovery not justified on theory that contract became illegal — suspension of performance of contract during hostilities.

Where the plaintiff, prior to the entry of the United States into the late war and during a time when a blockade of German ports was in effect, paid to the defendants who dealt in securities the purchase price of war loan bonds of the German government which at that time had not been issued, but for which the defendants held interim certificates issued by the German government which entitled them to the bonds when issued and which they transferred to the plaintiff on the payment of the purchase price, there was an actual sale to the plaintiff and transfer of title, and hence he

was not entitled subsequently to rescind the sale upon the ground that the defendants had not delivered the actual bonds themselves and to recover the consideration paid.

A recovery by the plaintiff of said consideration cannot be justified upon the theory that the contract of purchase, although lawful when made, became invalid when the United States entered the war, as said theory is entirely foreign to the allegations of the complaint and was not urged upon the trial.

By virtue of section 100, rule 1, of the Personal Property Law, the mere postponement of the delivery of the bonds did not affect the sale and time was not of the essence of the contract.

Moreover, *it seems*, that the contract of sale, valid when made, was not destroyed by the severance of peaceful relations between this country and Germany, as both parties were United States citizens or at least residents of this country and the only effect of the war was to suspend the performance of the contract during war conditions, and this is true even though the contract be considered as executory and not as an executed sale.

APPEAL by the defendants, Leopold Zimmermann and others, from a determination of the Appellate Term of the Supreme Court, entered in the office of the clerk of the county of New York on the 16th day of June, 1919, reversing a judgment of the City Court of the City of New York in favor of the defendants entered in the office of the clerk of said court on the 4th day of April, 1919, and directing a judgment in favor of the plaintiff.

*Francis M. Scott* of counsel [*Louis Werner*, attorney], for the appellants.

*Abraham I. Spiro*, for the respondent.

MERRELL, J.:

Defendants have appealed, by permission of this court, from a determination of the Appellate Term reversing a judgment recovered by the defendants in the City Court of the City of New York for $67.97, costs, upon a verdict of a jury who found for said defendants under direction of the trial court.

The action was to recover the sum of $1,775, with interest, which sum plaintiff paid to the defendants on December 14, 1916, as the purchase price of 10,000 marks of the Fifth German War Loan Bonds, but which bonds, at the time of the payment of the purchase price thereof, had not then been received by the defendants and were not delivered to the plaintiff. The

defendants are large dealers in bonds and securities, and, prior to the purchase of the bonds in question by the plaintiff, had purchased from a German bank a portion of said issue of bonds. This action is brought to recover the moneys thus paid by plaintiff to defendants upon an alleged rescission of the contract by plaintiff because of defendants' failure to deliver said bonds to plaintiff within a reasonable time. The purchase of these bonds on December 14, 1916, and the payment by plaintiff of the money which he seeks to recover in this action, was at a time prior to the entry of the United States into the World War. At that time, however, Germany was at war with other European countries, and a blockade was in effect, as the result of which there was no communication between Germany and this country. Owing to such blockade the defendants were not in the possession of such bonds, although they had purchased the same of the banking institution in Germany. As a matter of fact, the bonds, at the time of the purchase by plaintiff, had not been issued by the German government, but in lieu thereof the said government had issued interim certificates for said bonds, and the defendants, by their German agents, had received and held such interim certificates for the bonds which they had thus purchased, and, at the time of the sale of the 10,000 marks of said bonds to the plaintiff, defendants held in Germany sufficient of said interim certificates to cover the plaintiff's purchase. On the date of the purchase of the bonds by the plaintiff from defendants, the former called upon the latter at their place of business, and inquired about German marks, the plaintiff saying to one of the defendants, with whom he talked on that occasion, that he was informed that the marks were as low as fifteen cents, and that, being in the neighborhood, he came to inquire concerning the same. Plaintiff testifies that the defendant replied that the marks were then higher and going up, and that said defendant advised plaintiff to buy the bonds of the Fifth War Loan as a better speculation. Thereupon the plaintiff purchased 10,000 marks of said loan, paying therefor the said sum of $1,775. The bonds were not delivered, and the defendant explained to plaintiff that they were still in Germany, but the defendants issued their own interim certificates in writing to the plaintiff certifying the sale of the

10,000 marks of the Fifth War Loan of the German government five per cent bonds, at a total net price of $1,775, the receipt of which sum was in said certificate acknowledged by the defendants. At the same time the defendants delivered to the plaintiff another certificate, as follows:

" ZIMMERMANN & FORSHAY,
    " Members of the New York Stock Exchange,
" 9 & 11 Wall Street        ' 10,000 '        New York
" No. 5029                                    Dated Dec. 14, 1916
        " This is to Certify That
" Mr. Sam Erdreich has paid $1775.— Seventeen hundred Seventy-five and 00/100 Dollars for Mark 10,000 German Government 5% Bonds, Fifth War Loan (Ten Thousand Marks) Exclusive April 1, 1917, coupon.
    " The aforesaid securities are to be delivered by us, at our office against return of this Interim Certificate, upon arrival from Europe.        ZIMMERMANN & FORSHAY."

By this last-mentioned receipt it was thus expressly provided that the securities purchased, and for which plaintiff then paid, were to be delivered against return of the interim certificate that defendants issued, upon the arrival of said securities from Europe. The plaintiff testified that he was assured by the defendant with whom he dealt that the bonds would arrive by the next steamer. This defendants deny. It is a matter of common knowledge that at the time of this transaction there was no communication between Germany and the United States, and the plaintiff admits that he was aware of such conditions. On the other hand, one of the defendants, Leopold Zimmermann, testified that the inability of the defendants to deliver said bonds at the time of the purchase or thereafter was due entirely to the blockade against Germany, and that up to the time of the trial the defendants had been unable to procure said bonds or to deliver the same to the plaintiff. The defendant Zimmermann further testified that at the time of the purchase of said bonds by plaintiff, plaintiff was told that the German government was issuing at that time interim certificates only, and that it would require, perhaps, five or six months before the definite bonds would be ready for delivery abroad, and that hence, for the present,

no actual bonds could be sold, except on the interim certificates, and that the bonds which the plaintiff purchased would be delivered just as soon as possible. The plaintiff denied that he was told that it would require six months' time to get the bonds, and insists that the understanding was that they should arrive by the next steamer. Be that as it may, the certificate issued by the defendants to plaintiff at the time of the sale clearly and unequivocally stated that the securities were to be delivered at the office of the defendants against the return of the interim certificate then issued by them " upon arrival from Europe." Concededly the bonds in question had not arrived from Europe at the time of the trial of this action, although the defendants testified to active and presistent efforts on their part to obtain said bonds for delivery to the plaintiff. At the time of the purchase of these bonds the plaintiff was entirely familiar with the existing conditions and the fact of the blockade against Germany. At the time of the transaction, negotiations were under way for a cessation of hostilities, and peace between Germany and the other warring nations seemed probable. Early in 1917 it became apparent that no immediate peace would be effected, and as time went on it became probable that the United States would enter the conflict. In February, 1917, the plaintiff called upon the defendants at their place of business and inquired with reference to his bonds, and was told by the defendant Zimmermann that the bonds had not yet arrived, and that the plaintiff must have patience. Plaintiff made no demand for said bonds at that time, but merely called to inquire concerning the same. Afterwards, in April, and after a state of war had been declared between the United States and Germany, the plaintiff again called upon the defendants and then demanded, not the bonds which he had purchased, but that the defendants pay back to him the money which he had paid therefor. At that time the defendant Zimmermann stated that he was sorry that the bonds were not there; that the bonds could not be there because there was a war going on; and again told the plaintiff that he should have patience. Plaintiff replied to this that he was not asking for the bonds, but wanted his money back. His demand for the return of his money being refused, the plaintiff claims to have thereupon rescinded the said agree-

ment of sale because of the failure of the defendants to deliver the bonds within a reasonable time after the sale thereof to the plaintiff. On or about January 28, 1919, nearly two years later and when concededly the bonds which he had bought had greatly depreciated in value, plaintiff brought the present action to recover of defendants said moneys paid by him, with interest.

Upon the trial the plaintiff relied entirely upon his alleged rescission of the contract of sale because of the non-delivery of said bonds by defendants within a reasonable time. At the close of the evidence both sides moved for the direction of a verdict, and the trial court held that under the agreement between the plaintiff and the defendants, the defendants were only bound to deliver the bonds purchased upon their arrival here, and that no cause of action existed in plaintiff's favor for the purchase price thereof. Thereupon a verdict was directed by the trial court in defendants' favor and against the plaintiff. The judgment entered upon such directed verdict was reversed by the Appellate Term and judgment was directed for the plaintiff for the relief demanded in the complaint. The reversal was upon the ground that while the contract at the time it was made was entirely legal, it became invalid when this country entered the war, and that the plaintiff thereupon had a cause of action against the defendants to recover the moneys paid by him as for moneys had and received. (107 Misc. Rep. 508.) The reversal by the Appellate Term of the judgment of the City Court was upon a theory entirely foreign to any allegation of the complaint. The ground for such reversal was not suggested at the trial of the action. The complaint alleges a cause of action upon an alleged rescission of the contract because of defendants' neglect to deliver the bonds which they sold within a reasonable time. The Appellate Term entirely ignored the theory upon which the action was brought and upon which the case was tried, and rested its decision upon the ground that the contract, lawful at the time it was made, had become invalid by circumstances beyond the control of either party, and that the plaintiff might, therefore, bring action to recover back the moneys paid as though no contract had ever been made. Upon the theory of the plaintiff, as alleged in the complaint, and upon which the action was tried

in the City Court, I think the plaintiff cannot recover. Upon the papers delivered to the. plaintiff by the defendants, the sale of the bonds themselves was a completed transaction. The plaintiff paid the full purchase price therefor, and it only remained to deliver said bonds upon their arrival from Europe. The certificates themselves indicate that the transaction was a sale and not a mere contract to sell. The mere postponement of delivery did not affect the sale, as the sale was fully accomplished and was to be final upon delivery at a future date. Under section 100, rule 1, of the Personal Property Law (as added by Laws of 1911, chap. 571), it is provided: " Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed." (See, also, *Sanitary Carpet Cleaner* v. *Reed Mfg. Co.*, 159 App. Div. 587.)

The transaction between the plaintiff and the defendants was that of an executed contract of sale. Plaintiff thereby became the owner of the bonds in question, and for which he then paid. The only act that remained was to deliver his bonds upon their arrival from Europe. Time was not of the essence of the contract, and, therefore, defendants' failure to deliver the bonds at any particular time afforded the plaintiff no right to rescind the sale. (*Taylor* v. *Goelet*, 208 N. Y. 253; *Sturges & Burn Mfg. Co.* v. *American Separator Co.*, 158 App. Div. 63.)

Moreover, it was expressly stipulated by the parties that the securities were to be delivered at the office of the defendants against return of the interim certificate which they issued at the time of the sale, upon arrival of the bonds from Europe. Therefore, the delay of the defendants to deliver said bonds was of no consequence. If the defendants unnecessarily and unreasonably failed and neglected to deliver said bonds, then the plaintiff might have a cause of action against said defendants to recover any damages which he may have sustained by reason of the unjustified withholding from him of said securities by the defendants.

It is a matter of common knowledge that when the United

States became involved in the World War German securities depreciated in value, and unquestionably such fact was the incentive for plaintiff in April, 1917, demanding back his money rather than the delivery of the bonds which he had purchased as a speculation.

As to the ground upon which the learned Appellate Term bases its decision reversing the judgment of the City Court, that the contract, while legal at the time it was made, became illegal and incapable of execution after a state of war existed between the United States and Germany, I do not think such consideration should effect a reversal of the action of the trial court. No such claim was made by the plaintiff, either in his complaint or upon the trial. Furthermore, it seems to me that this contract, valid when made, should not be held to have been destroyed by the severance of peaceful relations between this country and Germany. The contract with reference to the sale of these bonds was not between a citizen of this country and one who by our declaration of war with Germany became an alien enemy. Both parties to this contract were citizens or, at least, residents of the United States. Concededly, at the time it was made the contract was a valid and proper one. Had the sale of these bonds, which was made on December 14, 1916, been at a date after our entry into the World War, notwithstanding the contract was not between an American citizen and a citizen of an enemy government, still the result of the sale being to furnish money to the German government with which to prosecute the war, the transaction, manifestly, would be illegal. As to whether the present sale was in any way affected by our declaration of war is a matter of some doubt. If the moneys paid by the plaintiff for said bonds had, in fact, been forwarded to Germany prior to our entry into the war, then the mere consummation of the transaction by the delivery of the bonds themselves after we entered the war would be a matter of little importance, but if the payment of plaintiff's moneys to Germany awaited the delivery of the bonds by that government, then, of course, the declaration of war should have at once halted the transaction. It seems to me that the Appellate Term was in error in holding that the obligation of the defendants to deliver the bonds purchased by the plaintiff ended with the outbreak

of the war.  At most, the delivery of said bonds was suspended during hostilities.  Until the declaration of peace, delivery of the bonds would be impossible, but when peace shall come, as it eventually must, then the valid transaction as to the sale of the bonds, which has been suspended during hostilities, may be completed by the delivery of said bonds.  In other words, our entry into the war did not cancel a valid contract between plaintiff and defendants, but merely suspended the same until peace shall be declared.  The plaintiff, who purchased these bonds purely as a speculation, should not be permitted to rescind such purchase merely because succeeding events may have lessened the values of the securities which he purchased.  The transaction was an entirely legal one at its inception.  The plaintiff had an entire right, if he saw fit, to purchase the securities of the German government, with whom this country was not then at war.  To whatever extent a state of war between this country and Germany may have forbidden the active continuance of such dealing or the consummation of the contract so long as hostilities continued, when peace is once declared, there certainly can be no public policy against the delivery to the plaintiff of the bonds which, prior to the war, he had purchased, and for which he had paid. This sale, within technical definition, is an executed contract. An executed contract has been defined as a contract wholly performed on one side, while an executory contract is a contract which is either wholly unperformed or under which there remains something to be done on both sides.  Inasmuch as by express stipulation between the parties the bonds in suit were to be delivered only on their arrival from Europe, and it appearing conclusively that prior to the commencement of this action such arrival was prevented by conditions for which neither party was responsible, the contract should be preserved during the continuance of hostilities between this country and Germany, and not dissolved by such war conditions.  As was said in *Mutual Benefit Life Ins. Co.* v. *Hillyard* (37 N. J. L. 444): " There is no reason why *ante bellum* contracts, not entirely executory, should not be preserved from dissolution, to the extent that they are not inconsistent with the duties and requirements of a condition of hostilities.  The test to dissolve a pre-existing contract is its essential antagonism to the

state of war.  *  *  *  The tendency of adjudication is to preserve and not to destroy, pre-existing contracts. Where performance can be had, without contravening the laws of war, the existence of the contract is not imperiled, and even if performance is impossible the contract may still, when partly executed, be preserved by engrafting necessary qualifications upon it, or suspending its impossible provisions, if made so by the act of the law. If the contract in question can be saved while the war lasts, it should be."

I am, therefore, of the opinion that we should not hold that the contract of sale in question, even though it be executory, was rendered illegal by the state of war between this country and Germany, and that, at most, performance of said contract was suspended during the existence of hostilities.

I am, therefore, of the opinion that the determination of the Appellate Term should be reversed, with costs, and that the judgment of the City Court should be reinstated and affirmed, with costs.

CLARKE, P. J., LAUGHLIN, DOWLING and PAGE, JJ., concur.

Determination reversed and judgment of the City Court affirmed, with costs to appellants in this court and in the Appellate Term.