In the Matter of the Estate of MARILYN MILLER O'BRIEN, Deceased.

Surrogate's Court, New York County, March 14, 1939.

*Chadbourne, Hunt, Jaeckel & Brown,* for the executor.

*Appel & Tannenbaum [Samuel W. Tannenbaum* and *Harry A. Tifford* of counsel], for Ado Thompson Miller.

*Joseph P. Brennan, Jr.,* for Edwin D. Reynolds.

*Glass & Lynch [Joseph Glass, Walter A. Lynch* and *Leslie Kirsch* of counsel], for Chester Leo O'Brien.

*Roy P. Monahan [Francis L. Field* of counsel], for Claire Montgomery, Ruth Sweeney and others.

*Edwin C. Mulligan,* for Carrie Carter.

*Fraser, Speir, Meyer & Kidder,* for Woodlawn Cemetery.

DELEHANTY, S. The mother of deceased seeks a construction of the will of deceased and a holding that she is entitled to preference over the other legatees named in the will. Deceased died on April 7, 1936, leaving a will dated April 25, 1931. She left no issue but left as her surviving distributees her husband and her mother and father. In article II of her will she bequeathed to two sisters and a niece her articles of wearing apparel, jewelry and all other articles of personal use or adornment which they might select. She then said: " In the event that they shall be unable to agree upon such a division within a period of six (6) months after the time of my decease, I direct that all of such property shall be disposed of as part of the residue of my estate."

By article III, deceased bequeathed to her father the sum of $25,000; by article IV, to the mother of a former husband the sum of $15,000; by articles V and VI, to each of two brothers-in-law one

dollar; and by article VII, to the Woodlawn Cemetery in trust to apply the income therefrom to the repair, preservation or renewal of deceased's mausoleum and to the planting and cultivating of trees, shrubs, flowers and plants in the cemetery lot with directions for the use of any surplus income to the improvement of the lot, the sum of $5,000.

Article VIII of the will disposed of the residuary estate as follows:

" All the rest, residue and remainder of my property and estate, whether real or personal, wheresoever situated and of whatsoever nature, and whether acquired before or after the execution of this Will, including all property hereinbefore attempted to be disposed of, the disposition whereof, by reason of lapse or any other cause, shall fail to take effect, I give, bequeath and devise to my Executors and Trustees herein named, in trust, nevertheless, for the following uses and purposes:

" To receive and collect the rents, profits and income therefrom and to pay the same as follows:

" (a) To pay to my mother Ado Thompson Miller, now residing at 1525 North Vanness Avenue, Hollywood, California, the sum of One hundred and fifty dollars ($150) per week, and such additional sums, from time to time, as my Executors and Trustees shall, in their uncontrolled discretion, consider necessary for her comfortable maintenance and support, so long as she shall live; such payments to be made out of the income of said trust fund, and out of the principal thereof to the extent, if any, that such income shall be insufficient for the purpose.

" (b) If any balance of said net income shall remain undisposed of under the foregoing provisions hereof, I direct my Executors and Trustees to pay such remaining income, during the lifetime of my said mother, share and share alike, to my sisters, Claire Montgomery and Ruth Sweeney, or whichever of them shall be living at the respective accrual dates of such income and to the then living issue, *per stirpes*, of either of them who shall be then deceased.

" (c) Upon the decease of my said mother (or if she shall have predeceased me, then upon my decease), I direct my Executors and Trustees to transfer, deliver and pay over, and I hereby give, bequeath and devise the principal of said trust fund (or so much thereof as shall then remain unexpended under the foregoing provisions hereof), share and share alike, to my sisters Claire Montgomery and Ruth Sweeney, or whichever of them shall be then living and to the then living issue, *per stirpes*, of either of them who shall be then deceased, or if both of them shall be then deceased, leaving no issue then living, then to the person or persons

who would be entitled to succeed to my personal estate if I were then to die intestate, under the now existing laws of the State of New York and in the shares and proportions in which such persons would be so entitled."

Article IX of the will reads: "It is my desire that my stepfather Caro Miller, of 1525 North Vanness Avenue, Hollywood, California, and any persons claiming under him, shall receive no benefits from the aforesaid bequest of income from my residuary estate to my mother Ado Thompson Miller. I request without imposing any legal obligation on my mother, that she use and dispose of the said income in a manner consistent with the desire expressed in this paragraph."

For the purpose of determining the preliminary issue whether petitioner is entitled on any ground to a preference, the parties have asked the court to assume certain facts to exist without conceding that they do exist. Accordingly the court assumes (1) that at the time deceased executed her will her net assets exceeded $500,000; (2) that at the time the will was executed she had sufficient assets to fully complete her testamentary scheme and to satisfy all of her testamentary bequests; and (3) that petitioner was unprovided for except for the provision made for her in the will. In addition to the assumed facts, it was proved that the assets of deceased at her death had a value of $92,131.34 and that debts, funeral and administration expenses amount to $43,656.90, leaving a net estate of $48,474.44. The husband of deceased has elected to take against the will so that the amount distributable to legatees under the will in all probability will not equal $25,000. Petitioner contends that she is preferred over all other individual legatees. She claims preference also over the bequest to the Woodlawn Cemetery except that she concedes that such amount of the bequest to the latter has priority as may be found to be a reasonable funeral expense.

In *City Bank Farmers Trust Co.* v. *Miller* (278 N. Y. 134) the question presented for decision was whether deceased had created a remainder or reserved a reversion in an *inter vivos* trust indenture which deceased had executed. Under the terms of the indenture deceased sought to provide that upon her death the trust principal should be paid to such persons as she might appoint by will and in default of appointment to such persons as would take under the laws of this State had she died intestate. The Special Term (163 Misc. 459) and the Appellate Division (253 App. Div. 707) held that the trust indenture had created a remainder and that deceased in her will had exercised validly the power of appointment in favor of the persons mentioned in her residuary clause. In

reversing the holding of the lower courts, the Court of Appeals held that the trust agreement gave rise to a reversion and not to a remainder and, so, that the appointment failed and the trust principal fell into the estate. In the decision of the Special Term holding that a remainder was created the court declared that deceased intended to and did exercise the power of appointment for the benefit of her mother, the petitioner here. It found as a fact that at the time of the execution of her will deceased was the owner of property having a value of more than $500,000 in excess of her debts and obligations. It was also found that at the time of the execution of her will she had an estate sufficient to carry out all of its provisions. The opinion of the Supreme Court said of the will in part: " Implicit in the will in its entirety and in its several provisions, is the desire and intention to make her mother and sisters the principal beneficiaries. When she executed her will Marilyn Miller was possessed of considerable wealth. The specific legacies were trifling by comparison with her resources. Her mother and sisters were her main concern. To them she left practically her entire estate."

The petitioner asserts that the facts found by the Special Term and affirmed by the Appellate Division and the conclusions reached as to deceased's intention were not disturbed by the reversal of the lower courts in the Court of Appeals. She asserts that they are binding on the parties here who (with the exception of City Bank Farmers Trust Company) are identical with the parties in the Supreme Court action. In support of this contention, petitioner cites *Matter of Hearns* (214 N. Y. 426) and *Sturges & Burn Mfg. Co.* v. *American Separator Co.* (158 App. Div. 63; 182 id. 103). In the former case the Appellate Division reversed the surrogate but did not reverse any of his findings or make new findings. The Court of Appeals held that the facts found by the surrogate remained in full force and effect. That case does not touch the question here. It merely applies the rule that unless a reversal is indicated upon specified questions of fact, it is conclusively presumed to be upon the law. (Civ. Prac. Act, § 602.) The other case cited involved a second trial of an action after an appeal in which the Appellate Division had decided one of the questions of law. On the second trial it was held that the Appellate Division ruling on the question was the law of the case. The case has no application here. The Court of Appeals in the *Miller* case (*supra*) held only that the trust agreement created a reversion and not a remainder. In view of this it was unnecessary for that court to review any other question in the case. Consideration of the facts found by the Supreme Court respecting the resources of deceased or peti-

tioner's dependence at the date of the will was unnecessary to the decision.

A judgment is conclusive upon the parties thereto only in respect to the law and facts necessary to uphold it; and although a decree in express terms purports to affirm a particular fact or rule of law, yet if such fact or rule of law was immaterial to the issue and the controversy did not turn upon it, the decree will not conclude parties in reference thereto. ( *Karameros* v. *Luther,* 279 N. Y. 87; *Woodgate* v. *Fleet,* 44 id. 1, 13; *House* v. *Lockwood,* 137 id. 259; *Stokes* v. *Foot,* 172 id. 327; *Stannard* v. *Hubbell,* 123 id. 520; *Landon* v. *Clark,* 221 Fed. 841.) While there is here no prior judgment to be considered, by analogy it must be held that the parties are not estopped to question the facts which were found in the Supreme Court action. In any event the issues here are not identical with those litigated in the Supreme Court. In the *Miller* case (*supra*) the issue was whether deceased had created a remainder or a reversion. Here, the issue is whether deceased intended to prefer her mother over all of the other legatees. So the question must be considered as an original one on the facts here assumed and proved and on the terms of the will.

Generally when the assets of an estate are insufficient to pay all legacies in full, such legacies abate proportionately according to their respective classes. (*Matter of Cameron,* 278 N. Y. 352; *Matter of Smallman,* 138 Misc. 889.) Where the will indicates in one form or another that one legacy shall be preferred over others, the rule applies which requires that the intent of the testator be given effect. This is so, of course, whether or not the preferred legacy is of a class which is subject to prior abatement under general rules of construction. In the absence of a verbally expressed intent in the will the general rule applies if the legacy does not come within certain exceptions created by the rules of construction. Briefly stated these exceptions are: (1) That a legacy for the maintenance of children of a testator is deemed preferred, (2) that a gift for the support and maintenance or education of other near relatives otherwise unprovided for is deemed preferred, and (3) that a legacy given for a valid consideration is preferred on the theory that the legatee is a purchaser. (*Matter of Cameron, supra.*)

If the mother of deceased is to be accorded a preference it must be because she comes within the second exception as a near relative of the testatrix who is unprovided for otherwise. The rules relating to the conditions which must exist generally before a preference under this exception will be granted, may be found in *Matter of Neil* (238 N. Y. 138); *Matter of Lloyd* (166 App. Div. 1); *Matter of Waxman* (129 Misc. 829); *Matter of Cameron* (*supra*); *Matter of*

*Wenner* (125 App. Div. 358; affd., 193 N. Y. 672); *Bliven* v. *Seymour* (88 id. 469); *Scofield* v. *Adams* (12 Hun, 366) and *Stewart* v. *Chambers* (2 Sandf. Ch. 382). As stated above it is assumed that petitioner is otherwise unprovided for.

In determining the question of intent, it is proper to consider not only the text of the will but the circumstances known to the testatrix when the will was made. (*Matter of Neil, supra.*) Under the facts assumed to be existing when the will here was executed the testatrix had net assets exceeding $500,000 in value which were fully sufficient to carry out her testamentary scheme and to satisfy all of the bequests in the will. On the basis of a net value of over $500,000, approximately ninety-one per cent of the property which the will was intended to dispose of was devoted to the residuary provision and hence to the petitioner's benefit primarily. These provisions direct the payment of $150 per week to the petitioner and such additional sums as the trustee shall consider necessary for petitioner's comfortable maintenance and support. Under the language of the will there is no room for doubt that the weekly payments and the additional sums, if any, were intended to assure such comfortable maintenance and support of petitioner as a primary wish of deceased. While there is provision for payment of income to the sisters of testatrix and for distribution of the remainder to them or their issue *per stirpes*, it is to be noted that they are to receive income, if at all, only after petitioner's wants had been provided for. Plainly, deceased was primarily concerned with the welfare of her mother and intended to provide completely for her support and maintenance before any benefits would accrue to the sisters or their issue.

Considering the text of the will, the facts assumed and proved and the surrounding circumstances, there is ample basis under the second exception to the general rule for holding that the provisions for petitioner are to be accorded a preference unless the fact that she is a residuary legatee is sufficient evidence of a contrary intent on the part of deceased.

Residuary gifts as a rule are postponed in favor of other dispositions in a will. (*Matter of Title Guarantee & Trust Co.*, 195 N. Y. 339; *Buffalo Trust Co.* v. *Leonard*, 154 id. 141; *Matter of Farmers Loan & Trust Co.*, 186 App. Div. 722; modfd. in other respects, 226 N. Y. 691; *Matter of Crouse*, 244 id. 400; *Farmers' Loan & Trust Co.* v. *McCarthy*, 128 App. Div. 621.) This general rule is subordinated to the primary and overmastering rule in all will constructions that the intent of the testator when ascertained is to govern. A number of decisions have given preferred status to residuary legacies for various reasons. When a reason was found to be

adequate the fact that the legacy was found in a residuary clause was held not to be a bar to the preference. While many if not all of these decisions discuss special reasons for the preferred status given in the respective case the principle which underlies all of them is that the intent of the testator is to be given effect. (*Matter of Dolan*, 4 Redf. 511; *Matter of Hardenberg*, 144 Misc. 248; *Matter of Spektorsky*, N. Y. L. J. Aug. 22, 1934, p. 503; *Matter of Clarke*, 158 Misc. 830; *Matter of Gabler*, 155 id. 418; affd., 242 App. Div. 797; affd., 267 N. Y. 559.)

No case has been called to the attention of the court which is precisely in point on the facts here present. There is no principle of construction in any event which is so clear as the principle that the real intention of the testator governs the order in which his gifts are to be paid. In the consideration of this will against the background of the finances of deceased at the time she drew the will it is apparent that she devoted ninety per cent of her estate to the maintenance and support of her mother. She gave her mother what in effect was an annuity because she directed that the amount fixed as adequate for her mother's care would be paid in all events whether the income were sufficient or not. The language of the will shows an anxious care by deceased for the well-being of her mother and an especial and primary intent to care for her mother. The court finds as a fact that that primary intent subordinates the general legacies to the father and to the sisters and to the other relatives of deceased by blood and marriage. So far as the will gives to the sisters of deceased the right to choose from her personal belongings there is no subordination. Deceased was not thinking of her wearing apparel and jewelry as the source of the mother's maintenance. The specific legacy given to the sisters consequently stands unimpaired under the terms of the will.

In view of the conclusion here reached upon facts which the parties ask the court to assume it will be necessary to take formal proof of the assumed facts. For that purpose the proceeding is restored to the calendar for hearing on the 20th day of March, 1939, at ten o'clock A. M. At that time the court will take proof of the assumed facts, including the resources of deceased at the date of the will and will take proof as to the cost of maintenance of the burial plot of deceased. The petition does not present the issue (referred to in the briefs) as to the intestate share of the husband of deceased. That question will be disposed of on the accounting.