In the Matter of the Estate of SETH LOW, Deceased.

Surrogate's Court, Westchester County, April 11, 1930.

*Taylor, Blanc, Capron & Marsh,* for executors and trustees.

*Taylor, Blanc, Capron & Marsh,* for remaindermen under the 17th clause.

*Flynt, Sully & Horan,* for Stanley G. Horan, a judgment creditor of George Cabot Ward Low, a remainderman under the 17th clause.

*Tolbert, Ewen & Patterson,* for Charles A. Frank, assignee of Seth Low, a remainderman under the 17th clause.

*Murray, Aldrich & Webb,* for Louis H. Rowe, trustee in bankruptcy of G. Maurice Heckscher, judgment creditor of George Cabot Ward Low.

*Murray, Aldrich & Webb,* for John Jerome Rooney, receiver of the property of George Cabot Ward Low.

*William F. Carell,* for G. Maurice Heckscher.

*Cullen & Dykman,* for residuary legatees.

*Rumsey & Morgan,* for Bank of America National Association, executor of Emma C. Low, deceased, residuary legatee.

*Cadwalader, Wickersham & Taft,* for St. George's Protestant Episcopal Church, residuary legatee.

*John Godfrey Saxe,* for trustees of Columbia University, residuary legatee.

*Emmett, Marvin & Martin,* for Mary Gardiner Curtis Prime, residuary legatee under will of Annie W. S. Low, deceased.

*John J. Ackerman,* special guardian.

SLATER, S. Seth Low, former mayor of the city of New York, and former president of Columbia University, died a resident of the county of Westchester in 1916, leaving a will probated in said county on the 16th of October, 1916. He left a widow and nephews and nieces surviving. The petitioning executor and trustee asks the construction of paragraph 17 of said will, which reads as follows:

" *Seventeenth.* I give and bequeath to my executrix and executor, hereinafter named, the sum of Four hundred thousand Dollars, in cash or in the securities in which my personal estate may be invested at the time of my death, as my executrix and executor may determine under the discretionary power hereinafter conferred upon them, In Trust to hold the same and to pay the income arising therefrom, as the same shall accrue to my wife, Annie W. S. Low, during her life; upon her death (whether before or after mine),

in order that they may deal more easily with the problems which they have inherited, I give and bequeath, out of the said principal sum, Eighty thousand Dollars to my sister-in-law, Marian Ward Low, wife of my late brother, Abbot Augustus Low, or, if she shall have died, to their descendants, in equal shares, *per stirpes* and not *per capita;* and I give and bequeath out of said principal sum, Eighty thousand Dollars to each of the children of said Abbot Augustus Low and Marian Ward Low, viz: Marian Low Raymond, George Cabot Ward Low, Abbot Augustus Low, and Seth Low; if any of said children shall have died, leaving descendants, I give and bequeath said sum of Eighty thousand Dollars which he or she would have received, to such descendants, in equal shares, *per stirpes* and not *per capita;* if any of said children shall have died, leaving no descendants, I give and bequeath said sum of Eighty thousand Dollars which he or she would have received, to the other children who may then be living and the descendants of those who may then be dead, in equal shares, *per stirpes* and not *per capita.*"

The will also gave specific legacies, and created two trusts for small amounts for the lives of certain persons, the principal to fall into the residuary estate.

By the 18th paragraph $100,000 is bequeathed absolutely to the wife, Annie W. S. Low. All the rest, residue and remainder of the estate is to be held in trust for his wife for her life. Upon her death the residuary estate is to be divided into two hundred parts as nearly equal as possible. The decedent gave fifty of said parts to the children of his late brother, Abbot Augustus Low. They were the same persons named as legatees in the 17th paragraph sought to be construed in this proceeding. Fifty other shares passed to the children of his sister, Ellen L. Pierpont, and fifty of said shares to the children of his stepbrother, William G. Low. The remaining fifty shares were given to relatives, friends and charity.

After payment of legacies and setting up the trusts, including the one under the 17th paragraph, the residuary estate consisted of personal property valued at $190,000, and the farm at Bedford in Westchester county valued at $198,500. The widow, Annie Ward Low, died April 1, 1929.

The decedent's executors were authorized to set up the $400,000 trust mentioned in the 17th paragraph in cash, or in securities. They elected to set aside securities as the corpus of the trust. It appears from the account that these securities appreciated in value during the life of the trust and had a value of $578,861.42 at the death of Mrs. Low.

The question presented is whether the remaindermen, of whom there are five, shall receive legacies of $80,000 each, or take the principal of the trust in the sum of $578,861.42 in five equal shares.

It is the contention of the children of Abbot Augustus Low, named in the 17th paragraph, that the testator intended to give vested remainders of the entire principal of the trust to the persons therein mentioned, and that the language used by the testator was sufficient to carry out this intention. It is argued that the intention is evidenced not alone from the 17th paragraph itself, but from the will as a whole. They claim that they are entitled to any increase as the burden of the possible decrease in said principal was borne by them during the lifetime of Annie W. S. Low.

The residuary legatees submit that the gifts of $80,000 each take the character of demonstrative legacies, and in any event the intention is clear and unmistakable that the decedent's direction was to allot $80,000 to each nephew and niece — no less and no more.

The remaindermen under the 17th clause say in reply that the intention is plain from the words of the will that the decedent meant to give said sum of $400,000 and its increase, if any, to said nephews and nieces, and that the character of the legacy is not to be regarded; that the legacies are not demonstrative since there is no direction for their payment from any fund in existence at the time of the testator's death.

A demonstrative legacy partakes of the nature of a general legacy and also of the nature of a specific legacy by pointing out the fund from which the payment is to be made. Differing, however, from a specific legacy in the particular that, if the fund pointed out fails, resort is had to the general estate. (*Crawford* v. *McCarthy*, 159 N. Y. 514, 518; Roper & White on Legacies, 192.) Such a legacy is a pecuniary legacy with a particular security, and the civil law termed it a demonstrative legacy. (*Fowler* v. *Willoughby*, [1825] 2 Sim. & Stu. 354, 358.) It differs from the other legacies in that, if the fund be called in or fail, a legatee will not be deprived of his legacy but be permitted to receive it out of the general assets; yet the legacy is so far specific that it will not be liable to abate with general legacies upon a deficiency of assets. (*Robinson* v. *Geldard*, 3 Macn. & G. 544, 735; *Walton* v. *Walton*, 7 Johns. Ch. 258, 262.)

Careful research fails to find a case which distinguishes between a fund in existence at the death of the testator and a fund created or set aside out of property of which he died seized, in pursuance of the directions in his will.

It is my opinion that the demonstrated fund may be created by

a testator's will, and come into existence after death. (*Matter of Brundage*, FOWLER, S., 101 Misc. 528, 539; *Matter of Ingraham*, KETCHAM, S., 104 id. 644; *Matter of Phillips*, COHALAN, S., 108 id. 413, 421; *Matter of Miller*, FOLEY, S., 118 id. 877; *Matter of Tallman*, HARRINGTON, S., 131 id. 863; *Matter of Burroughs*, 251 N. Y. 549.) In the *Burroughs* case the Appellate Division of the Second Department reversed the Surrogate's Court and held that the direction for the payment of a legacy out of the proceeds of the sale of the real estate is a demonstrative legacy (226 App. Div. 683). The decision was by a divided court. Upon appeal, affirmance was made by a unanimous court.

In my opinion, the testator created a demonstrative legacy — so that in case of wastage the slack could be picked up from the general assets and the gift at the death of his wife be made definite and certain, with the legal consequence that the accretions would fall into the residuary estate.

The five remaindermen upon the death of the testator each took a vested interest in a legacy of $80,000, with provision for substitution. The payment, however, was postponed for the benefit of the estate. (*Matter of Jarvis*, 110 Misc. 5, 12, and cases cited.)

What can be gleaned from the will with regard to the testator's intention?

The will was carefully drawn. The testator was a man of learning and accustomed to the management of large interests. In determining the testator's intent, we must assume that he contemplated a reasonable and natural construction of the language used. There is nothing ambiguous about the provisions of the will. Throughout the will are found words indicating his affection for his people. In the 17th paragraph the gift of remainder is made to nephews and nieces " in order that they may deal more easily with the problems which they have inherited." The problems inherited by the children of Abbot Augustus Low were financial in character — lack of money.

It is a fundamental proposition that the construction of every will in the final analysis stands by itself, depending upon the varying language used and the varying conditions surrounding the testator. (*Furniss v. Cruikshank*, 230 N. Y. 495, 505.) Irrespective of the ordinary construction that would be applied to a paragraph of a will under general rules, the decedent's intent, based upon general considerations and guesses, must prevail, unless it be contrary to public policy or some positive rule of law. (*Matter of Bump*, 234 N. Y. 60.) In arriving at the intent of the testator the rule is that it must be ascertained as embodied in the will read in its entirety. (*Livingston v. Ward*, 247 N. Y. 97.)

A study of the will reveals to me that the testator intended the gift of $80,000 to be definite and certain. He knew the uncertainty in amount of a residuary estate, particularly after the lapse of a period of years. In the instant case the decedent's whole residuary estate, the gift in the 17th paragraph, and the gift of $100,000 to the widow, amounted to about $900,000. Of this estate he gave to his wife outright $100,000, and five $80,000 legacies to certain definite nephews and nieces, leaving a residue of $400,000. The testator gave the children of his brother, Abbot Augustus Low, a double portion, i. e., fifty shares of the residue, the kind of gift which may be varying and uncertain, together with the definite and certain gift of $80,000 to each as a legacy under the 17th paragraph. A quarter of the residue is now ascertained to be about $100,000, or $20,000 to each niece and nephew. If the residuary estate shrank to a small amount, we find unfailing gifts of sums of money so that " they may deal more easily with the problems which they have inherited." There is nothing to indicate that in 1916 Seth Low anticipated there would be a large appreciation in his securities. He had clearly in mind the definite purpose to give $80,000 to each of the children of his brother. In the 17th paragraph he said: " I give and bequeath out of said principal sum Eighty thousand Dollars to each of the children of said Abbot Augustus Low and Marian Ward Low, viz."— and then he names them. Continuing, he says: " If any of said children shall have died leaving descendants, I give and bequeath *said sum of Eighty thousand Dollars* which he or she would have received to such descendants in equal shares, *per stirpes* and not *per capita;* if any of such children shall have died, leaving no descendants, I give and bequeath *said sum of Eighty thousand Dollars* which he or she would have received to the other children who may then be living and the descendants of those who may then be dead, in equal shares *per stirpes* and not *per capita*." There is found here unmistakable evidence that the testator in these words intended to give to each child only, but surely, $80,000, and in case of death, to keep it within the blood of his brother, Abbot Augustus Low.

It is significant that the testator gave the residuary estate in *shares or parts*, while the division of the trust fund in the 17th paragraph was *definite* sums of money out of the fund.

Where the residuary bequest is not circumscribed by clear expressions in the will, by words of unmistakable import, the residuary beneficiaries will take whatever may fall into the residue, whether by lapse, invalid disposition *or other accident*. (*Matter of Benson*, 96 N. Y. 499, 509; *Riker* v. *Cornwell*, 113 id. 115, 127; *Morton* v. *Woodbury*, 153 id. 243; *Albany Hospital* v. *Albany*

*Guardian Society,* 214 id. 435, 446; *Matter of Cole,* 235 id. 48, 56.) The presumption against intestacy is very strong and is applied in all cases. (*West* v. *West,* [2d Dept.] 215 App. Div. 285.)

The trustee is directed to pay five sums of $80,000 each to the persons designated in paragraph 17, or their assigns, in full satisfaction of their legacies in said amounts and to transfer and pay over any excess of the principal of the trust created by said paragraph as a part of the decedent's residuary estate.

Submit decision and decree in accordance with this opinion, with notice to all attorneys appearing.