In the Matter of the Estate of THOMAS F. SMALLMAN, Deceased.*

Surrogate's Court, Kings County, January 16, 1931.

* See, also, 139 Misc. ——.

*Alvah W. Burlingame,* for the executors.

*John H. Donlon* for Hulda Lundstedt, legatee.

*Simpson, Thacher & Bartlett* [*H. Clinton Corwin* of counsel], for Yale University, legatee.

*Cadwalader, Wickersham & Taft,* for Salvation Army, legatee.

*Charles H. McCarty,* for Jane C. Smallman, legatee.

*Edward J. McCrossin,* for St. John's Home, legatee.

*Esquirol & Esquirol* [*Quincy D. Baldwin* of counsel], for Ralph Smallman, legatee.

WINGATE, S. The questions involved in this construction proceeding relate to the method and order of abatement of the legacies given in the will of Thomas F. Smallman which was admitted to probate in this court on January 8, 1929. Eighteen numbered items of the will direct the disposition of an aggregate sum of $396,500. Estimates of the net estate available for payment of these benefactions vary between $333,137.15 and $293,098.30 with a litigated adverse claim still undetermined. Sixty-five thousand dollars in all is dedicated to the purchase of a burial plot, the erection of a mausoleum and its perpetual care; outright general legacies amounting to $85,500 are directed to relatives, employees, friends and charities; two legacies, totaling $6,000, are given to physicians for services rendered, and an outright bequest of $5,000 is given to the widow, " to be paid as soon as possible after my death."

No serious disagreement arises among the parties respecting the relative rights of these legatees, the controversy centering on the bequests in the items numbered 8 and 22. The former gives $10,000 in trust to pay $30 a week from income and principal to testator's father, Joshua Smallman, for life, further directing " that upon the death of Joshua Smallman, the unexpended balance shall become a part of my residuary estate," which, by item " twenty-eighth " is given to the widow. The second controverted item, numbered " twenty-seven," establishes a trust fund in $225,000, the income from which is payable to the widow, Jane C. Smallman, until her death or remarriage, and thereafter " the net principal sum and the net undistributed income therefrom, shall thereupon be paid to Yale College, at New Haven, Connecticut, to be used for the building of a wing for the Yale Medical School, to be known as the Jane Smallman Wing, for the treatment of the sick poor."

The provisions in the will in favor of the widow are expressly given in lieu of dower. Testator's father has died. The fund

directed by the will to be erected for him has been set up and shows an unexpended balance, the proper devolution of which is one of the most warmly contested issues.

The question of preferential treatment of testamentary directions is so many sided and has been the subject of so numerous and frequently inharmonious decisions, that any attempt at a comprehensive review of the subject must be approached with considerable diffidence. Nevertheless, the extreme frequency with which such problems present themselves and the misconception of certain of their aspects, which the court has encountered, seem to indicate that an attempt at clarification of the basic governing principles would be of general utility to practitioners in this court.

Considerations upon which claims for preference may be based are threefold, namely:

*First.* Statutory direction;

*Second.* Expressed intention of the testator; and

*Third.* Presumed intention of the testator based on the usual mental attitude of mankind.

These questions will be considered in order.

The existing statutory directions affecting priority in expenditure from the assets of an estate are found in sections 212, 216, 222 and 285 of the Surrogate's Court Act.

Section 216, so far as here material, reads: "Every executor or administrator shall pay, out of the first moneys received, the reasonable funeral expenses of decedent, and the same shall be preferred to all debts and claims against the deceased."

Section 222 authorizes the testamentary fiduciary to "pay from the funds or estate in his hands, from time to time, as shall be necessary, his legal and proper expenses of administration;" section 285 prescribes the rates of commission which shall be allowed him for his services, and section 212 relates to the payment of decedent's debts and establishes an order of priority in that regard.

It is apparent, therefore, that controlling authority superimposes upon the will of every testator the limitation upon his power of disposing of his property that his assets shall first be applied in payment of his debts and funeral and administration expenses including executor's commissions, and that only as to any balance remaining after their satisfaction can any valid testamentary gifts be made. As noted by the Court of Appeals in *Meyer* v. *Cohen* (111 N. Y. 270) a direction for the solution of the obligations, payment of which is directed by statute, is, by law, to be read into every will, the court saying (at p. 274): "The statutes provide that all debts and funeral expenses shall be paid first, and a direction

in the will to do what the law requires to be done can throw no material light upon the meaning of the will."

The statutory preference in favor of funeral expenses has, in practically all decided cases, received a very liberal interpretation and has been held to include the purchase of a burial plot (*Matter of Hackett*, 130 Misc. 339; *Matter of Hinman*, 32 id. 536, 538; *Matter of Maverick*, 135 App. Div. 44, 45; affd., 198 N. Y. 618; *Matter of Meek*, 113 Misc. 301, 304; *Matter of Warner*, 39 id. 432, 436); a sum to be used for its perpetual care (*Matter of Schaaf*, 120 Misc. 292, 293, 294; *Matter of Brundage*, 101 id. 528, 537; affd., *sub nom. Matter of Farmers' Loan & Trust Co.*, 186 App. Div. 722; modified on other grounds, 226 N. Y. 691; *Matter of Maverick*, 135 App. Div. 44, 45; affd., 198 N. Y. 618; *Matter of Sharff*, 136 Misc. 627, 628; *Matter of Dougherty*, 64 id. 230, 231; *Matter of Meek*, 113 id. 301, 304), and the erection of headstones, monuments and memorials (*Wood* v. *Vandenburgh*, 6 Paige, 277, 285; *Matter of Meek*, 113 Misc. 301, 304; *Matter of Maverick*, 135 App. Div. 44, 45; affd., 198 N. Y. 618; *Matter of Sharff*, 136 Misc. 627, 630).

This preference has even been extended by judicial construction in certain cases to include the removal of the remains of testator's relatives to the new plot, purchase of which was directed (*Matter of Hackett*, 130 Misc. 339), to the setting up of headstones at the graves of testator's parents, brother and sister (*Wood* v. *Vandenburgh*, 6 Paige, 277, 285), and the gift of $500 for the erection of a monument at the grave of testatrix's husband (*Matter of Warner*, 39 Misc. 432, 436).

In view of the statutory basis for the granting of such a preference, namely, to defray the reasonable funeral expenses of the testator, a number of these determinations seem of doubtful authority, as does the statement of *Matter of Meek* (113 Misc. 301, at p. 304): " There is a positive direction for the expenditure of a specified sum for the erection of a monument and the care of the cemetery plot, and therefore the reasonableness of the amount of such expenditure is not to be considered."

By the express terms of the statute, reasonableness of expense is made a criterion of preference, and its direct and emphatic deletion seems hardly within the scope of statutory construction.

A determination of the amount of expenditure which is to be considered reasonable must, in this regard, of necessity vary with the differing circumstances of particular testators, but as to any sum beyond that required for the respectable disposal of the remains, and adequate care and marking of the burial place in accordance with the means and station in life of the deceased, this court is disposed to agree with the result of the late Surrogate FOWLER

(*Matter of Brundage*, 101 Misc. 528, 538, 539; affd., *sub nom.* *Matter of Farmers' Loan & Trust Co.*, 186 App. Div. 722; modified on other grounds, 226 N. Y. 691), that a bequest of this nature is a charitable use payable only on a parity with other general legacies. The court is not so cynical respecting the frailties of human nature as to be inclined to indulge the presumption that a testator in the preparation of his will, absent unequivocal expression of such desire, wished to sacrifice the welfare and prospects of the personal objects of his bounty in favor of a monument or mausoleum which could result in nothing more than personal, ephemeral glorification, and which would involve diminishing the benefits to the living beyond that required by a possible ratable abatement.

A question is frequently presented as to whether bequests for masses or prayers for the dead are properly to be awarded preference in payment. Unless a preference is expressly directed by the testator, which branch of this subject is not involved in the question of statutory preference now under examination, it has been determined by controlling authority that bequests for this purpose are merely charitable legacies except in so far as they are an actual integral part of the funeral ceremonies; in which case, and to a reasonable amount, they are entitled to a preference by the terms of the statute, as a funeral expense.

In commenting on a bequest of $500 for the saying of masses, the court remarked in *Matter of Black* (1 Con. Sur. 477, at p. 478): " This is evidently a distinct and separate legacy and cannot be considered as part of the funeral expenses."

In *Matter of McAvoy* (112 App. Div. 377) the Appellate Division of this department, in approving and following this decision, said (at p. 378): " A mass is not peculiarly a part of a funeral service like unto the office for the dead. It is the sacrament of the Eucharist, and a low mass is one said and not sung. (Cent. Dict.) In the religion of the Holy Roman Church masses are celebrated for the good of those who are dead, but in no sense is a mass so celebrated necessarily a part of the funeral service."

This result was also reached by the Court of Appeals in *Matter of Morris* (227 N. Y. 141), the court saying (at p. 144): " ' Masses are religious ceremonials or observances of the church of which she was a member, and come within the religious or pious uses which are upheld as public charities.' " To like effect, see *Matter of Welch* (105 Misc. 27); *Matter of Beck* (130 id. 765); *Matter of Werrick* (135 id. 876, 877).

Turning now to the second basis for preference, namely, the desire of the testator, as formally expressed in the will itself, it is unquestionable that where such a direction clearly appears, it will

be given controlling effect. Innumerable statements and applications of this basic principle might be cited.

As was said in *Matter of Lloyd* (166 App. Div. 1, at p. 7): "* * * an administrative rule of abatement may be nullified and must be set aside if the intent of the testator to that effect is clear and explicit in the particular case."

Such a direction was given effect in *Morse* v. *Tilden* (74 App. Div. 132), where legacies in the later portion of the will were directed to be paid " whenever the fund shall come into their hands sufficient to pay the same, *after the foregoing provisions of my will are satisfied* " (p. 136). To like effect see *Orton* v. *Orton* (3 Abb. Ct. App. Dec. 411, 415); *Matter of Morris* (227 N. Y. 141, 144); *Matter of Frankenheimer* (195 id. 346); *Matter of Crouse* (244 id. 400, 404); *Wechsler* v. *Drey* (203 App. Div. 692); *Matter of Brundage* (101 Misc. 528, 534; affd., *sub nom. Matter of Farmers' L. & T. Co.*, 186 App. Div. 722; modified on other grounds, 226 N. Y. 691).

This principle has even been carried to the extent of giving preference to general over specific legacies where testator expressly so directed. (*Shethar* v. *Sherman*, 65 How. Pr. 9.)

On the other hand, it has been uniformly held that " ' The *onus probandi* is upon the party seeking priority, and proof must be clear and conclusive that the testator so intended.' " (*Florence* v. *Sands*, 4 Redf. Sur. 206, 209.) Again, as is said in *Matter of Williams* (27 Misc. 716, at p. 717): " Among a group of general legacies which are mere bounties, priority will not be given to any of them unless the testator's intention to create a preference is most clearly and unequivocally expressed, and the burden is strongly upon him who would brush away the maxim that equality is equity, and ask that one legatee should be fully satisfied to the loss and detriment of others equally as much and as deservedly entitled. Undoubtedly, in the event of a deficiency of assets, the court should, if possible, cause the loss to be borne equally among the beneficiaries."

In accordance with this last principle of decision, it has been held that no preference was intended by reason of directions that certain legacies be paid at the end of two years, and others prior to the expiration of such time (*Trustees of Harvard College* v. *Quinn*, 3 Redf. Sur. 514); that certain legacies be paid " as soon as possible " (*Matter of Meek*, 113 Misc. 301); that bequests be paid " in the order named in this my will " (*Matter of Williams*, 27 Misc. 716); that payment be made before the statutory period had elapsed (*Matter of Gibson*, 166 App. Div. 1); by reason of the fact that the particular legacy was given by a codicil (*Wetmore* v. *St. Luke's Hospital*, 56 Hun, 313, 321); for the reason that one legatee was

designated " beloved " while the others were not (*Matter of Williams*, 27 Misc. 716). So also " It has been held that the words ' in the first place,' ' in the next place,' or ' afterwards ' used in introducing the legacies, create no priority *inter se* or over other general legacies." (*Matter of McKay*, 5 Misc. 123, 131.)

The final basis of preference, namely, the presumed intention of the testator, comprises not merely the great bulk of the adjudications on the subject, but the most involved legal and logical questions. In this connection, the salient points to be observed are the nature of the gift and the relationship borne by the testator to the beneficiary. It follows, therefore, that on this phase of the question, the circumstances surrounding the testator at the time of the execution of the will are most relevent in determining his presumed intention. This has frequently been noted in decisions.

The Court of Appeals says in *Matter of Neil* (238 N. Y. 138, at p. 140): " It is the testator's mind we seek to read.   *   *   * To interpret this intent we may consider the circumstances known to him when the will was made, and we may search the will itself for any language that may give us light." (See, also, *Matter of Lloyd*, 166 App. Div. 1, 7; *Pierrepont* v. *Edwards*, 25 N. Y. 128; *Matter of Schaaf*, 120 Misc. 292, 294.)

In seeking for testator's intent, however, confusion will be avoided if it be recalled that the only relevant intent is that which existed *at the time the will was drawn*. The sole inquiry is as to his state of mind at that time. The office of the court is merely to construe the will then executed — to determine the manner in which the testator, in his then existing situation, wished such property as he might possess at his death to pass. This consideration is the same as was emphasized in the recent opinion of this court in *Matter of Lilienthal* (139 Misc. 225). As was said in *Morris* v. *Sickly* (133 N. Y. 456, at p. 460) the " intention and purpose must be found to exist at the time of the execution of the will, and cannot be varied or changed by any after-occurring event."

This thought is of particular pertinence in this connection, since in practically every case where the question of abatement arises, the conditions existing when the case comes before the court are different from those which the testator contemplated at the time he executed the will.

The question is not, therefore, what he would have desired had he realized that his estate would be insufficient to pay all benefits in full, but what he actually had in mind when the will was made. The court is powerless to construe the will on the basis of the

eventualities which have actually transpired since such an act would not amount to a construction of the will which was actually made, but would be a rewriting of the instrument by the court in the manner in which it might conjecture the testator would have wished, had he foreseen the actual turn of events. This the court is properly powerless to do.

Looking for the intention of the testator at the time the will was drawn, " It is to be presumed that the will was drawn honestly and in good faith and that when the testator provided a legacy he intended that it should be paid." (*McGoldrick* v. *Bodkin*, 140 App. Div. 196, 199.) " He naturally expects that all legacies will be paid in full " (*Matter of Neil*, 238 N. Y. 138, 140), and " It should be assumed that the testator in framing his testamentary scheme contemplated that his property was sufficient in amount to carry it out in all details." (*Matter of Title G. & T. Co.*, 195 N. Y. 339, 344, 345.)

This branch of the question is succinctly summarized in *Wetmore* v. *St. Luke's Hospital* (56 Hun, 313, at p. 321): " We must construe this will upon the assumption that the testatrix believed she had sufficient estate to pay all her legacies. She doubtless had no thought of the contingency which has arisen, namely, the deficiency of assets, and, therefore, in the making of [322] her codicil she gave no more specific directions in regard to this legacy than are therein contained. Merely because the testatrix's object may be defeated unless the preference be given does not authorize the court to give it a preference which the testatrix had not in mind at the time of the making of the will. Merely because subsequent events have shown that she made miscalculations in regard to the amount of her estate, the court is not authorized to give a different direction in respect to the order in which legacies are to be paid than that contained in the will."

The earliest instance in which courts have construed testamentary directions as implying an intent to prefer, concerns specific legacies and devises.

A testamentary benefit is said in the early case of *Tifft* v. *Porter* (8 N. Y. 516, at p. 518) to be specific " * * * when it is a bequest of a specified part of testator's personal estate which is so distinguished. * * * In those cases in which legacies of stocks or shares in public funds have been held to be specific, some expression has been found from which an intention to make the bequest of the particular shares of stock could be inferred. Where, for instance, the testator has used such language as, ' my shares,' or any other equivalent designation, it has been held sufficient. But the mere possession by the testator at the date

of his will of stock of equal or larger amount than the legacy, will not of itself make the bequest specific."

Similar definitions have been given by the courts from time to time. (*Crawford* v. *McCarthy*, 159 N. Y. 514, 518; *Matter of Matthews*, 122 App. Div. 605, 607, and many other cases.)

The basis of the rule respecting specific legacies and one of the resulting consequences are aptly stated by the Court of Appeals in *Taylor* v. *Dodd* (58 N. Y. 335, at p. 349): " It is the rule that specific legatees can only be called upon by the executor for abatement, upon the failure of the general personal estate to discharge debts. Until then, these legacies must be fully satisfied to the prejudice of general legatees. * * *

" The principle is the presumed intention of the testator to give a preference to those legatees. This intention is pre- [350] sumed from his severing specific parts of his personal estate from the rest and bequeathing them specifically." (See, also, *Matter of Hackett*, 130 Misc. 339; *Toch* v. *Toch*, 81 Hun, 410, 414.)

On the other hand, since a testamentary gift of a specific article requires for its consummation that such identical article or item of property be in the possession of the testator at the time of his death, it follows that if it be lost, destroyed or aliened by the testator between the time of the execution of the will and his demise, the specific legatee or devisee will take nothing. (*Ametrano* v. *Downs*, 62 App. Div. 405, 407, 408; affd., 170 N. Y. 388, 391; *Matter of Solomon*, 165 App. Div. 276, 278; *Newcomb* v. *Trustees of St. Peter's Church*, 2 Sandf. Ch. 636, 647; *Beck* v. *McGillis*, 9 Barb. 35, 57; *Philson* v. *Moore*, 23 Hun, 152, 155; *Hosea* v. *Skinner*, 32 Misc. 653, 655; *Matter of Bouk*, 80 id. 196, 202; *Matter of Strasenburgh*, 136 id. 91, 93.)

This result proved most distasteful to the courts, whose sense of justice was frequently outraged by the apparently inadvertent miscarriage of the desire of the testator to benefit certain natural objects of his bounty. To obviate this condition in certain cases, judicial legislation about the middle of the nineteenth century created a new variety of legacy which was invested with all of the benefits of preference attached to a specific gift, but which was relieved of the disadvantage of ademption in case the specific thing or fund could not be identified after the death. This form of legacy was termed demonstrative and has survived to the present day as a frequent source of perplexity to the bench and of mystification to the bar.

While the distinguishing characteristics of specific legacies are vitally important to an understanding of the general subject of preferential treatment of testamentary benefactions, their intimate

review must be postponed to an examination of the nature of these demonstrative gifts.

The first use of term " demonstrative " which has been found as applied to a testamentary gift, is in the official headnote of *Tifft* v. *Porter* (8 N. Y. 516). The opinion in that case may, however, be searched in vain for any language supporting such new classification. The facts shown were that testator owned 360 shares of a certain stock. He gave 240 shares of stock of the same name to one person and 120 to another. The difficulty which the court experienced was in justifying the delivery of any particular shares of this holding to either legatee. After stating the characteristics of a general legacy and giving the definition of a specific legacy hereinbefore quoted, the opinion (at p. 520) proceeds quite flatly to determine that the legacies in question are general, in the following terms: " It is true that the will of the testator in this case, after giving ' 240 shares of bank-stock,' does refer to the bank-stock above mentioned; but this expression seems to me as well applicable to such bank-stock as the executors might purchase, as to that which the testator then had on hand. It would, I think, be going too far, upon an equivocal expression of this sort, to hold this to be a specific legacy, which without it, would clearly be general * * *." The court continues (at p. 521): " The inclination of the courts to hold legacies to be general, rather than specific, and on which the rule is based that to make a legacy specific, its terms must clearly require such a construction, rests upon solid grounds. The presumption is stronger that a testator intends some benefit to a legatee, than that he intends a benefit only upon the collateral condition that he shall remain till death, owner of the property bequeathed. * * * An intention of benefit being once expressed, to make its taking effect turn upon the contingency of the condition of the testator's property being unchanged, instead of upon the continuance of the same feelings which in the first instance prompted the selection of the legatee, requires, as it ought, clear language to convey that intention."

It may reasonably be doubted whether the idea of the creation of a new classification of legacies occurred to the court until a somewhat later time. In any event, its first authoritative genesis appears to have occurred in *Giddings* v. *Seward* (16 N. Y. 365), decided somewhat over four years later. In that case the donative provision read: " I give * * * unto my beloved mother * * * the sum of twelve hundred dollars and interest on the same, contained in a bond and mortgage given to me by Orren W. Seward and Caroline his wife, and dated the third day of January, 1847."

The court, in holding that this gift was a demonstrative legacy, wrote as follows (beginning at p. 367): "There is often great difficulty in determining, in regard to bequests of stocks or other securities having a definite and fixed pecuniary value, whether the testator intended to give the specific security mentioned in the will, or a sum equivalent to the nominal amount of such security. Inasmuch, however, as the legacy, if specific, is lost, in case the subject of it is disposed of by the testator, or is extinguished by the payment or otherwise in his lifetime, courts, proceeding upon the presumption that the testator intended a real benefit to the legatee, incline to consider legacies as general rather than specific, where the language of the bequest will admit of that construction. * * * The language is: 'I give and bequeath,' &c., not a certain bond and mortgage, but 'the sum of $1200, and interest on the same, contained in a bond and mortgage,' &c. The bequest is of a certain sum of money. The bond and mortgage is simply referred to as the source from which the money is to be derived. * * * The leading subject of the gift is not the bond and mortgage, but the sum of money mentioned; and it could scarcely be claimed, if one-half of the mortgage has been paid in the lifetime of the testatrix, that the bequest was thereby reduced to the sum of $600 instead of $1200.

"The legacy therefore is, I think, general, in the sense that it would not have been regarded as adeemed by the assignment of the bond and mortgage, or its extinction in the lifetime of the testatrix. It belongs to a peculiar class of legacies, usually termed demonstrative, which partake so far of the nature of specific legacies, that the security [368] referred to in the bequest, if in existence, and belonging to the testator at the time of his death, is set apart as a primary fund for the payment of the legacy."

It is a somewhat pregnant indication of the novelty of the doctrine enunciated that the opinion does not cite a single authority in its support.

From this time on, the courts seem, with increasing avidity, to have seized upon the opportunity thus offered of escaping, in part at least, from the disagreeable duty of holding that a legatee who would previously have been sent away empty handed by reason of a failure to find the thing given, might not share in the estate as a general legatee.

The resulting doctrine is stated in the leading case of *Crawford* v. *McCarthy* (159 N. Y. 514), where a demonstrative legacy is defined as follows (at p. 519): "A demonstrative legacy is a bequest of a certain sum of money, stock or the like, payable out of a particular fund or security. For example, the bequest to an

individual of the sum of $1,500 is a general legacy. A bequest to an individual of the proceeds of a bond and mortgage, particularly describing it, is a specific legacy. A bequest of the sum of $1,500 payable out of the proceeds of a specified bond and mortgage, is a demonstrative legacy. A demonstrative legacy partakes of the nature of a general legacy by bequeathing a specified amount and also of the nature of a specific legacy by pointing out the fund from which the payment is to be made; but differs from a specific legacy in the particular, that if the fund pointed out for payment of the legacy fails, resort may be had to the general assets of the estate."

Similar definitions may be found in many later cases, one of the most recent being *Matter of Low* (136 Misc. 532, 535). (See, also, *Matter of Phillips*, 108 Misc. 413, 421; *Florence* v. *Sands*, 4 Redf. Sur. 206, 209.)

A correct understanding of the limitations of this doctrine cannot, however, be attained without a study of the facts and determination in the *Crawford* v. *McCarthy* case. The will there found, after certain gifts to a daughter, gave her " also money belonging to me on deposit to her credit. Excepting * * * the disposition of moneys belonging to me now on deposit in her name." Certain other property was given a son, the will continuing: " and I direct my daughter * * *, out of the moneys * * * on deposit in her name, to pay my said son the sum of fifteen hundred dollars." At the time of making the will testatrix had $1,800 on deposit in her daughter's name, but at her death this had dwindled to less than $1,500. The ruling of the court was that the gift to the son was a specific and not a demonstrative legacy, the following illuminative language being used (at p. 519): " Out of this fund she directs her daughter to pay to her son William the sum of $1500. It will be observed that there is no general bequest of the sum of $1500, but that his right thereto rests solely in the direction to the daughter to pay him that sum and that payment is to be made out of the particular fund designated as the fund belonging to the testatrix but on deposit in the name of Isabella. It is contended that this direction to pay William is a demonstrative legacy. We do not so understand it. As we have seen, two elements are necessary in order to constitute [520] such a legacy. There must be *first*, a bequest in the nature of a general legacy, and, *second*, it must point to a fund out of which the payment is to be made, partaking of the character of a specific legacy. But one of these elements is present in this case, and that is the one directing the payment to be made out of a particular fund. We think, therefore, it is a specific legacy and the plaintiff is entitled to

only that which the testatrix had on deposit in the name of her daughter."

The confusion resulting from an attempt to apply the first half of this rule, appearing on page 518 of the opinion without reference to the qualifying statements on page 520, is graphically demonstrated by a review of the facts and results in a few cases selected almost at random.

In *Matter of Beckett* (15 N. Y. St. 716) a legacy of " all the money I die possessed of in several banks and bonds " was held specific; while in *Matter of Tallman* (131 Misc. 863) a gift of $2,000 cash in a specified bank was held demonstrative, and *Giddings* v. *Seward* (16 N. Y. 365) attached a like interpretation to a legacy of the sum of $1,200 " contained in " a specified bond and mortgage.

As noted, *Crawford* v. *McCarthy* (159 N. Y. 514) held specific a gift of $1,500 out of the moneys on deposit in testatrix's daughter's name, a similar result being attained in a gift of half of testatrix's money and securities in *Hamilton* v. *Hamilton* (75 Misc. 21) and a legacy of the " sum of $243.92, a portion of the debt due me from the said James Davis secured by his notes," in *Davis* v. *Crandall* (101 N. Y. 311). Opposed to these, we find a legacy to certain persons of " $1500 — my husband's insurance money which they already have," classed as demonstrative in *Matter of Ingraham* (104 Misc. 644).

So much for funds or securities existing at testator's death.

Turning to the rulings respecting legacies from funds which were to come into existence after the testator's death, gifts of specified sums out of the sales prices of certain stocks were held specific in *Matter of Phillips* (108 Misc. 413) and *Matter of Meek* (113 id. 301). A gift of half of the proceeds of specified realty was similarly construed in *Matter of Matthews* (122 App. Div. 605) and a gift of the balance of proceeds of the sale of personal property after payment of funeral expenses was given like designation in *Matter of Brett* (57 Hun, 400). On the other hand, *Matter of Miller* (118 Misc. 877) determined that a gift of $300 " out of the money that will be realized from the sale " of specified premises was demonstrative; and an annuity directed to be paid out of certain rents and income was similarly construed in *Florence* v. *Sands* (4 Redf. Sur. 206).

It is, of course, obvious that these results are, in many instances, in hopeless conflict. If an important office of judicial determinations is to enunciate rules of guidance for the general public, as has frequently been said, the result of these decisions must be to leave both the bar and the laity, not to mention the courts, in a hopeless maze.

The difficulty which has been experienced seems, as noted, to lie chiefly in the failure to read the opinion in *Crawford* v. *McCarthy* as a whole and in employing as a test only the definition of a demonstrative legacy on page 518 without reference to the limitations on page 520 with the resulting failure to comprehend and apply the rule that a demonstrative legacy must possess all of the qualities of a general legacy. The distinguishing characteristics of a general bequest have been repeatedly stated. In *Crawford* v. *McCarthy* (159 N. Y. 514) it is said (at p. 518): " A general legacy is a gift of personal property by a last [519] will and testament, not amounting to a bequest of a particular thing or money, or of a particular fund designated from all others of the same kind."

A slightly different turn is given to the same thought in *Bliven* v. *Seymour* (88 N. Y. 469), in which testator gave a watch to one daughter and simultaneously gave thirty-five dollars to another. The contention was that the latter should be deemed specific. In holding it a general legacy, the court said (at p. 475): " The gift is simply of so much money. It is not of any particular sum, or even out of any described fund. Any money of the estate would discharge it, and whatever we may imagine was the unuttered and unexpressed wish or purpose of the testator, we cannot disregard the thing which he has said, and put in its place the thing he did not say. \* \* \*" In *Matter of Matthews* (122 App. Div. 605) the court says (at p. 607): " The proceeds of a sale of specified property, which is directed by the will to be sold, are just as much a specific legacy as if the property itself had been given."

The inquiry, in the last analysis, must always be whether the direction of the testator can or cannot be fully satisfied by a payment out of the general funds of the estate or whether its solution is directed by the surrender of all or a part of a specified and distinguished thing or fund. In the former case it may be general or demonstrative, in the latter it is inevitably specific.

The true rule would seem to be that to constitute a demonstrative legacy it must be a general gift solvable from any property of the estate, but charged on a particular asset belonging to the testator or upon the proceeds of the sale of some such article or piece of property. If it is an express gift of the whole or a portion of a segregated item or portion of the estate, it is not a demonstrative, but a specific gift.

A nearly perfect example of a true demonstrative legacy is presented in *Newton* v. *Stanley* (28 N. Y. 61). By the 6th clause of his will, testator, in this case, gave his son Lewis $250, and by the 7th, his son Solomon, $400. The 8th clause read: " I hereby direct my son James \* \* \* to pay the aforesaid sum of two

hundred and fifty dollars to Lewis * * * and the aforesaid sum of four hundred dollars to Solomon * * * from the moneys due and to become due to me from him, the said James * * *; and the balance of said debt owing to me by said James * * * I hereby give and bequeath to him * * *."

This was an action by the executor to foreclose a mortgage given by James to the testator to secure the debt referred to. In affirming a judgment of foreclosure, the court said (at p. 65): " There is no ground for alleging, that the legacies to Lewis H. Stanley and Solomon Stanley are specific. They are not bequests of the mortgage, nor of the debt secured thereby, or of any portion thereof. The testator bequeaths to them two several sums of money absolutely; and the subsequent provision for their payment is *demonstrative* only. They are general legacies, the testator pointing out the fund to satisfy them, and not bequests of a specific debt. Had the defendant fully paid the mortgage, to the testator, in his lifetime, the legacies would not have been adeemed by such payment; which would have been the case, if the bequests had been in terms, of portions of the mortgage-debt."

Another such example will be found in *Matter of Broderick* (163 App. Div. 91), where testator in the 3d item of his will gave general legacies aggregating $4,750, and in the succeeding item directed the sale of specified realty for their payment.

As heretofore noted, a specific legacy is entitled to priority to the extent that the specific article or fund is in existence, and this principle has been held to apply even to a case where the assets, sufficient to satisfy all and leave a residue, had been subsequently wasted by a devastavit of the executors. (*Farmers' L. & T. Co.* v. *McCarthy*, 128 App. Div. 621)

A beneficiary under a demonstrative legacy is entitled to a like preference to the extent of the *rem* or fund on which his legacy is charged. As to any excess, he stands in the position of a general legatee. (*Florence* v. *Sands*, 4 Redf. Sur. 206, 209, 210; *Matter of Newman*, 4 Dem. Sur. 65; *Matter of Warner*, 39 Misc. 432, 436; *Matter of Miller*, 118 id. 877, 878; *Crawford* v. *McCarthy*, 159 N. Y. 514, 518.)

On this phase of the subject it is to be noted that a general legacy for a specific purpose is held to be general and not specific in its nature (*Wetmore* v. *St. Luke's Hospital*, 56 Hun, 313, 321; *Matter of Hinman*, 32 Misc. 536, 538; *Matter of Werrick*, 135 id. 876, 877; cf. *Matter of Heyman*, 221 App. Div. 772); and that " the mere enumeration of specific articles in a residuary clause will not make the bequest specific as to such articles, although the gift may be regarded as specific if the articles are so named as to distinguish them from the residue, as by the words ' together with,'

' as well as ' and ' also ' or the like.  *  *  * ''  (*Matter of Crouse,* 244 N. Y. 400, 404.)

The next classification of testamentary benefits to be considered is that of general legacies, which have already been partly considered, and which, in the usual case, as noted, are deferred to specific and demonstrative gifts and are preferred only to gifts of or from the residue of the estate.  (*Maynard* v. *Maynard,* 108 Misc. 362, 367; *Title G. & T. Co.* v. *Ebaugh,* 184 N. Y. Supp. 351, 352; *Matter of Ham,* 123 Misc. 889, 894, and other cases above cited.)

The bases of the presumed intention of the testator to prefer certain benefactions, which have been considered up to this point, are founded on the form or manner of making the gift.  This is obviously largely a question of the donative language contained in the will.  The next class of preferred legacies found its priority largely on the extraneous circumstances of the testator, and his relation to the enumerated objects of his bounty.

Preferences of this type may be grouped roughly into two classes, *first,* gifts to those who take as purchasers or semi-purchasers; and, *second,* legacies to those who have a prior claim upon the testator by reason of legal or moral dependence.

First to be noted in the list of legacies to beneficiaries in the purchaser class are those given to a wife in lieu of dower.  This preference is of very early origin and was an inheritance from the common law of England at the time of the Revolution.  It was promptly recognized by our courts and has been continuously maintained.

One of the early statements of the doctrine is contained in *Isenhart* v. *Brown* (1 Edw. Ch. 411, decided in 1832), in which the court says (at p. 413): '' The legacies given to her by this will are partly specific and partly pecuniary; and they constitute the provision made for her by the testator in lieu of her right of dower in his estate.  It is the price put by the testator himself upon that right, and which she is at liberty to accept.  Her relinquishment of dower forms a valuable consideration for the testamentary gifts.  In this point of view, she becomes a purchaser of the property left to her by the will.  So, on the other hand, the husband offers a price for his wife's legal right of dower which he proposes to extinguish; and if she agrees to the terms, she relinquishes it and is entitled to the price.  It is, therefore, a matter of convention or contract between them; and what she thus becomes entitled to receive, is not by way of bounty — like other general bequests; but as purchase money for what she relinquishes and which, consequently, must be paid in preference to other legacies — they being merely voluntary.''

The later cases which have applied the principles here enunciated have done little more than to reaffirm them, their result being uniform to the effect that a legacy to a widow in lieu of dower is preferred over other general legacies given by the will. (*Orton* v. *Orton*, 3 Abb. Ct. App. Dec. 411, 415; *Stimson* v. *Vroman*, 99 N. Y. 74, 80; *Meyer* v. *Cahen*, 111 id. 270; *Bliven* v. *Seymour*, 88 id. 469, 476; *Dunning* v. *Dunning*, 82 Hun, 462, 466; affd., 147 N. Y. 686; *Williamson* v. *Williamson*, 6 Paige, 298, 305; *Matter of McKay*, 5 Misc. 123, 126; *Matter of Brooks*, 2 Con. Sur. 172, 174; *Matter of Nagel*, 12 N. Y. Supp. 707; *Matter of Dolan*, 4 Redf. Sur. 511; *Matter of Morris*, 6 Dem. 304; *Matter of Hackett*, 130 Misc. 339; *Rowe* v. *Lansing*, 53 Hun, 210, 212; *Matter of Woodbury*, 40 Misc. 143, 148.) It has been held with equal uniformity that the value of the dower interest surrendered by the wife, and the discrepancy between it and the value of the legacy conferred, are immaterial, as affecting the right to such preference. (*Matter of McKay*, 5 Misc. 123, 126; *Matter of Brooks*, 2 Con. Sur. 172, 174; *Matter of Dolan*, 4 Redf. Sur. 511, 512; *Matter of Woodbury*, 40 Misc. 143, 148.). No case in which the question of such preference was raised has been found where it appeared that the testator, at the time of his death, had no interest in any realty. The nearest approach to such a situation was presented in *Matter of McKay* (5 Misc. 123) where the only properties which might answer such a description were a leasehold and an interest in common with several others in certain realty bought for speculative purposes with title taken in the name of their joint nominee. In that case the preference was granted, the court saying (at p. 128): "At common law dower attached only to legal estates; * * * but the common law rule does not prevail in this State, and many of our decisions hold, either expressly or by implication, that a widow's dower attaches to such equitable interest in lands as the husband dies seized of."

While the fact that the legacy is given in lieu of dower should appear from the express terms of the will, or by fair inference therefrom (*Matter of Williams*, 1 Redf. Sur. 208, 214), it has been held that even in the absence of such expression, a preference would be upheld where the widow had acted on the understanding that the testamentary benefits in her favor were based on such a condition. (*Betts* v. *Betts*, 4 Abb. N. C. 317, 390, 391.)

The preferential treatment of a legacy in lieu of dower is very marked, and will apply not only to trust provisions and general legacies in favor of the widow (*Matter of Morris*, 6 Redf. Sur. 304), but also to residuary gifts (*Meyer* v. *Cahen*, 111 N. Y. 270), and will be given priority over a legacy to a child or other dependent for maintenance. (*Williamson* v. *Williamson*, 6 Paige, 298, 305.) Such

preference has been sustained even in the face of a testamentary direction that legacies to children contained in the will "shall be paid * * * in preference and priority to any other gift or legacy." (*Rowe* v. *Lansing*, 53 Hun, 210.)

While a testamentary benefit to the widow in lieu of dower is entitled to a preference, it is still a legacy or devise, as the case may be, and is otherwise subject to the same considerations which apply to similar benefactions. As was pointed out in *Orton* v. *Orton* (3 Abb. Ct. App. Dec. 411, at p. 414): "Every bequest of personal property is a legacy, including as well those in lieu of dower, and in satisfaction of an indebtedness, as those which are wholly gratuitous. * * * No doubt the rule is, that a legacy in lieu of dower is to be preferred, in case of a deficiency of assets, to other general legacies. * * * But this rule is for cases where the will does not provide a different one. The bequest to the wife, in lieu of dower, may be made subject to any condition which the testator chooses to impose upon it, for the wife is not obliged to give up her dower in exchange for it, unless she so elects. If it is incumbered by a condition, the acceptance of it is subject to such condition."

It follows, therefore, that while classed as a purchaser as compared with other legatees, the widow is deferred to creditors of the testator (*Matter of Dolan*, 4 Redf. Sur. 511; *Matter of Nagel*, 12 N. Y. Supp. 707), and her legacy, if merely personalty, will be subject to possible abatement in favor of a residuary legatee of real property. (*Babcock* v. *Stoddard*, 3 Thomp. & C. 207, 209; *Sanford* v. *Sanford*, 4 Hun, 753.)

For reasons analogous to those just considered, it has uniformly been held that a legacy conditioned on the relinquishment of some other subsisting right or interest, such as a debt, invests the legatee with the quality of a purchaser in the event of acceptance, and entitles him to preferential treatment as compared with other legatees. (*Matter of McKay*, 5 Misc. 123, 126; *Matter of Woodbury*, 40 id. 143, 148; *Matter of Schaaf*, 120 id. 292, 293; *Wood* v. *Vandenburgh*, 6 Paige, 277, 284; *Cole* v. *Niles*, 3 Hun, 326.)

In the last cited case, the *ratio decidendi* of the court on the subject is clearly stated (at p. 328), as follows: "The legacy is the price, or value, put by the testator upon the opposing claim, which is submitted for acceptance at his decease. The final acceptance of the proposal involves the relinquishment of the claim, and forms a good consideration for the legacy. A contract is thus completed by which the legatee or his representatives become entitled to the legacy; not as a bounty, but as the purchase-price of the claim which has been cancelled or abandoned."

It has, therefore, been held as a logical sequence that such a legacy is not only preferred, but does not lapse on the predecease of the legatee.

There is also a dictum in *Matter of Lloyd* (166 App. Div. 4, 7) that a legacy " in performance of a solemn promise " is likewise entitled to preference, but it is far from clear as to what the court had in mind by this statement, and no decision to that effect has been found.

In all these cases it has been the uniform determination that an excess in the value of the testamentary benefaction over the obligation to be extinguished was immaterial for reasons similar to those applying in cases of legacies in lieu of dower.

An apparently analogous but essentially dissimilar line of cases concerns the testamentary provisions for executors and others as compensation for the services to be rendered by them in connection with the affairs of the estate. Such provisions are held to be compensation for services and not gifts and to effect the substitution of the sums specified in the will for the statutory rates of remuneration, as inducements to the performance of the service desired. (*Matter of Tilden*, 44 Hun, 441, 444; *Richardson* v. *Richardson*, 145 App. Div. 540, 543, 544; *Waters* v. *Collins*, 3 Dem. 374; *Matter of Dougherty*, 64 Misc. 230, 231.) It would follow as a logical matter that if the service were, for any reasons, not performed, the testamentary provision would abate in its entirety, and this result has been reached. (*Matter of Brigg*, 39 App. Div. 485, 488.)

An interesting question is raised in *Matter of Sharff* (136 Misc. 627, 630) as to whether a preference should not also be given to a legacy looking to the doing of some act by the legatee other than the performance of duties connected with the administration of the testator's estate or the care of his dependents. On general principles no reason is perceived why such a testamentary provision, if really intended to amount to the making of an offer as distinguished from the conferring of a bounty, should not lead to a contractual relation which would entitle the legatee, on acceptance or performance, whichever was demanded by the terms of the will, to preferential treatment, for reasons analogous to those hereinbefore considered, but no case has been found in which this point has been directly adjudicated.

Turning now to preferences granted by reason of a relationship of dependence of the legatee to the testator, it is familiar law that since the early English case of *Lewin* v. *Lewin* (2 Ves. Ch. 415) all common-law jurisdictions have granted preferences to legacies for the support, maintenance or education of natural dependents not

otherwise provided for.  (*Matter of Neil*, 117 Misc. 498, 502; see, also, affirming opinion, 238 N. Y. 138, 140; *Matter of Gibson*, 166 App. Div. 1, 7; *Petrie* v. *Petrie*, 7 Lans. 90, 97; *Williamson* v. *Williamson*, 6 Paige, 298, 305; *Shethar* v. *Sherman*, 65 How. Pr. 9, 11; *Matter of Dougherty*, 64 Misc. 230, 231; *Matter of Obst*, 115 id. 711, 712; *Waters* v. *Collins*, 3 Dem. 374; *Stimson* v. *Vroman*, 99 N. Y. 74; *Matter of Hackett*, 130 Misc. 339; *Matter of Hinman*, 32 id. 536, 537; *Steward* v. *Chambers*, 2 Sandf. Ch. 382, 393; *Matter of Brown*, 42 Misc. 444, 447; *Bliven* v. *Seymour*, 88 N. Y. 469, 476.)

The fundamental basis for this preference has been variously stated.  The reason given in *Matter of Neil* (117 Misc. 498, 503) is:  " * * * because the law fastens upon a father the legal obligation to support, maintain and educate his children  * * *."  In the leading case of *Scofield* v. *Adams* (12 Hun, 366) the court states its basis of decision as follows (beginning at p. 369):  " * * * legacies for maintenance [370] and support of those standing in near relation to the testator, and more or less dependent upon his bounty and otherwise unprovided for do not abate with general legacies.  This rule stands upon the ground that the testator must have intended to give a preference to such legacy over all others of a general character."

The opinion continues (on p. 371):  " The rule of law enunciated in them is reasonable, as it is natural and in accordance with common sentiments of affection, which cannot be entirely ignored in giving construction to wills.  It commends itself to the conscience as just and right.  It would be unnatural not to intend especial favor in the bestowal of bounties to those who were strong in the affections and dependent upon kind regard.  So it will be presumed that legacies for the *support and maintenance* of those standing in near relations to the testator, more or less dependent upon his bounty, were intended by him to have preference over others of a general character."  While it is reasonably apparent that the original inception of the doctrine in *Lewin* v. *Lewin* was largely, if not wholly based on the theory of legal dependence, it seems equally unquestionable that the practical application of the principle has far exceeded this modest limitation and that the accepted rule to-day is based on a combination of the reasons stated in the two cases last quoted.  Thus there is no legal obligation of support of a husband or of an unadopted stranger although the testatrix stood in *loco parentis* to such person, yet preference in legacies to both have been sustained.  (*Morse* v. *Tilden*, 74 App. Div. 132; *Scofield* v. *Adams*, 12 Hun, 366; cf. *Matter of Hinman*, 32 Misc. 536, 537.  Stranger — *Matter of Gibson*, 166 App. Div. 1;

*Matter of Dougherty,* 64 Misc. 230; *Matter of Obst,* 115 id. 711; cf. *Matter of Brown,* 42 id. 444.)

The general tendency of authority appears to be to grant a preference to a legacy to any person closely connected with the testator by blood or association provided dependency can be demonstrated, but to hold such dependency upon the testamentary benefit as an absolute prerequisite. Thus preferences have been uniformly denied where it appeared that the legatees were not dependent upon the benefit, or the dependency was not clearly established, and under such circumstances such results have been reached in the cases of children (*Williamson* v. *Williamson,* 6 Paige, 298); a sister (*Matter of Wenner,* 125 App. Div. 358; affd., 193 N. Y. 672); an adult son (*Matter of McKay,* 5 Misc. 123); grandchildren (*Matter of Schaaf,* 120 id. 292) and a mother (*Matter of McKay,* 5 id. 123).

By way of summary, it may be said that preference will be given to a testamentary provision in favor of one who, either by virtue of relationship or the conduct of the parties, is dependent upon the testator for support and whose circumstances are such as to make the testamentary benefit reasonably necessary for support or comfort.

The single additional preference remaining for consideration is the familiar one of ordinary general legacies over residuary bequests, which latter receive nothing until all general legacies are paid. (*Farmers' L. & T. Co.* v. *McCarthy,* 128 App. Div. 621, 625; *Stewart* v. *Chambers,* 2 Sandf. Ch. 382, 393; *Matter of Warschauer,* 136 Misc. 433, 435; *Wetmore* v. *St. Luke's Hospital,* 56 Hun, 313, 317; *Buffalo L. & T. Co.* v. *Leonard,* 154 N. Y. 141.)

It follows that the order of payment in the usual testate estate is as follows:

1. Funeral expenses to a reasonable sum dependent upon the station in life of the deceased. This will include a reasonable sum for religious services cotemporaneous with the funeral, the purchase of a burial plot, the erection of markers thereon and the care thereof. Any directed expense in this regard which will result in an abatement of subsequent benefactions will not be granted such preference beyond the minimum sum necessary to reasonably perform the respective offices.

2. The ordinary and necessary expenses of the administration of the estate, which will not include any sum as compensation to fiduciaries beyond the statutory rate, to the detriment of the creditors of the deceased.

3. The debts of the deceased in the order of priority enumerated in section 212 of the Surrogate's Court Act.

4. Specific and demonstrative legacies and devises to the extent of the identified articles or funds given or charged.

5. Legacies to purchasers or semi-purchasers including a wife in lieu of dower, a creditor in satisfaction of his debt, a fiduciary to whom compensation has been given in excess of the statutory rate and who has performed the requested services, to an amount equivalent to the portion of his compensation which has not been paid as an administration expense under " 2," *supra,* and gifts to dependents of the deceased within the rules and subject to the limitations hereinbefore discussed.

6. General legacies other than those heretofore classified, including charitable gifts, directions for the payment of funeral and mortuary expenses in excess of those payable under " 1," *supra.*

7. Residuary bequests.

As hereinbefore discussed, the express terms of the will may vary the order of payment of any gift falling within the classifications numbered " 4," " 5," " 6 " or " 7," but it will not be permitted to vary those numbered " 1," " 2 " or " 3 " since these are express statutory directions. Furthermore, the burden is most strongly upon any person seeking to vary the order stated, to demonstrate with the utmost clarity that such was the testator's intention.

Specific and demonstrative legatees whose gifts consist of or are charged on different things or funds are, by the nature of their gifts, entitled to a preference as against other similar beneficiaries whose legacies are charged on different things or funds, but in so far as their benefits are payable from the same fund, they must abate *pro rata* if the fund is insufficient to pay all in full. In like manner legacies to persons within the classes designated " 5," " 6 " and " 7," *supra,* abate *pro rata* with others in the same class in the event of a deficiency of assets to pay all (*Matter of Crouse,* 244 N. Y. 400, 403; *Matter of Neil,* 238 id. 138, 139; *Matter of Meek,* 113 Misc. 301, 305; *Matter of Dougherty,* 64 id. 230, 232; *Waters* v. *Collins,* 3 Dem. 374) and this rule applies equally whether the legacies are given outright or in trust (*Matter of Hinman,* 32 Misc. 536, 538).

One additional phase of the general subject of abatement remains for consideration. While perhaps the most interesting and certainly the most important in the case at bar, the many distinguished counsel in the case have failed to shed any appreciable light on its solution. It concerns the proper treatment and classification of the gifts of the remainders of trust funds, the erection of which are directed by the will. This question is here presented in connection with the remainder of the trust of $10,000 for Joshua Smallman, under the " eighth " item of the will, which remainder is directed

to become a part of the residuary estate, such residue in turn being given to the widow by an independent item; and in the trust of $225,000 for the widow, under item "twenty-seven," the remainder of which, by the same paragraph is given to Yale University.

The former direction will be first considered. In this connection, we have two pertinent authorities, substantially four-square on the facts. The first is *Wetmore* v. *St. Luke's Hospital* (56 Hun, 313), decided by the General Term for the First Department in 1890. In that case a trust was erected with a direction that upon the death of the life tenant the remainder should fall into and be disposed of as a part of testatrix's residuary estate. The question determined was whether the corpus of this fund, on the demise of the life beneficiary, should be distributed among those named as the residuary legatees or should be paid to preferred legatees whose benefactions had abated by reason of prior insufficiency of general assets. In holding in favor of the residuary legatees, the court says (at p. 320): " In the consideration of this question it is necessary to bear in mind that the testatrix supposed her estate would be sufficient to pay the whole amount of her legacies. Having this in mind, it seems to be perfectly apparent what she meant by her residuary estate in respect to the trust funds mentioned. The legacies provided for in the will became payable within one year after her death. These trust estates might extend for a considerable length of time. She did not intend that these general legacies should be left open until these trust estates should fall in; and it cannot be assumed that, in referring to her residuary estate, she had in mind anything else than the final residuum which would remain after the payment of all her legacies, and which would finally pass under the residuary clause to the four infants mentioned therein. * * *

" If any other construction is to be placed upon this clause, the result necessarily follows that the testatrix knew that she was giving more in her general legacies than her estate amounted to, and that these trust funds at some indefinite period in the future, when the trust estate would be terminated, would be required in making up the amounts which she had thus devoted to charity."

The second authority of interest is *Matter of Title Guarantee & Trust Co.* (195 N. Y. 339). There testator bequeathed certain personal effects to his wife and erected a trust for the lives of his wife and daughter directing that the remainder thereof " be paid into and form a part of my residuary estate hereinafter disposed of." The residue was payable to certain charities. Several general legacies were given. The will contained a clause to the effect that

in the event of a deficiency in assets to pay all legacies, those, except to the wife and daughter, should abate *pro rata*. The estate proved insufficient to pay the general legacies in full, and the question presented was whether the remainder of this trust should be used to make up the deficiency or should go to the residuary legatees. In deciding in favor of the general legatees, the court said (at p. 344): " It should be assumed that the testator in framing his testa [345] mentary scheme contemplated that his property was sufficient in amount to carry it out in all details. It seems perfectly clear that the testator never anticipated that the placing of these amounts in the residuary estate would, in case of insufficient assets, lead to the abatement of general legacies and the partial destruction of his main testamentary scheme.

" We are of opinion that, considering the whole will, it was the clear intention of the testator to treat the trust fund set apart for the benefit of his wife, in the event of her death, as a part of the rest, residue and remainder of his estate, after the payment of general legacies in full. There could be no rest, residue and remainder of his estate — no real residuary fund — until that was done."

However much this court might, under ordinary circumstances, be impressed with the logical exposition in the *Weimore* case, the last quoted determination is obviously a four-square decision binding upon it. Nor is this result varied by the fact that in the will at bar the provisions thereof, on behalf of the widow, are stated to be in lieu of dower. Such a provision, as has been noted above, gives rise only to a presumption of intention to prefer which can certainly not be said to be entitled to greater weight than the express provision found in *Matter of Title Guarantee & Trust Company*. If the result in this determination is sound, which so far as this court is concerned is not open to question, it must follow that no general gift to the residue, as distinguished from a gift to beneficiaries named in the residuary clause (*Matter of Reynolds*, 242 N. Y. 389), can be beneficially operative in that clause until all prior legacies are fully satisfied.

The problem presented by the remainder of the $225,000 trust is somewhat similar to questions which came before the courts in *Matter of Brundage* (101 Misc. 528; affd., *sub nom. Matter of Farmers' L. & T. Co.*, 186 App. Div. 722; modified, 226 N. Y. 691) and in *Matter of Low* (136 Misc. 532).

In the *Brundage* case, as noted on page 539 of the opinion, the 6th paragraph of the will read: " *Sixth.* I make the following bequests of cash, to wit: * * * (h) To the Home for Old Men and Aged Couples, * * * the sum of * * * ($5,000) on the death of Mary E. Taylor, as *hereinafter mentioned.*"

The succeeding item provided: "*Seventh.* I give and bequeath the following named sums of money in trust to the persons named, with remainder as stated respectively: * * * (k) To my husband's niece, Mary E. Taylor, * * * the income on the sum of * * * ($20,000) during her life, and on her death the sum of * * * ($5,000) *as hereinbefore mentioned* shall go to the Home for Old Men and Aged Couples * * *."

Respecting these provisions, the court ruled (at p. 540): " The bequest to the Home for Old Men and Aged Couples is a demonstrative legacy. A demonstrative legacy is a bequest of a certain sum of money, stock or the like, payable out of a particular fund or security. (*Crawford* v. *McCarthy*, 159 N. Y. 519.) "

In *Matter of Low* (136 Misc. 532) the 17th item of the will bequeathed $400,000 in trust to pay the income to the wife for life, and on her death to pay the remainder to five specified individuals in amounts of $80,000 each. During the continuance of the life estate, the principal fund appreciated to the extent of $170,000, and the question presented was as to whether this excess should go to the remaindermen of the trust or pass under the general residuary clause of the will. In reaching the latter result, the court said (at p. 536): " In my opinion, the testator created a demonstrative legacy — so that in case of wastage the slack could be picked up from the general assets and the gift at the death of his wife be made definite and certain, with the legal consequence that the accretions would fall into the residuary estate."

In the *Low* case, if the stress is to be laid on the gift of the several specific sums rather than on the gift of the remainder in five parts, the result is obviously correct, but it is by no means necessary to hold that the several gifts of $80,000 each are demonstrative legacies in order to reach it, since such conclusion would be equally attainable by holding that the gift was specific to the extent given, as was done in *Crawford* v. *McCarthy*, with the further result that since the total of such gifts aggregated only $400,000, while the total *res* presently distributable amounted to $570,000, the balance passed under the residuary clause of the will as not otherwise directed. The same considerations obviously apply to the like result in *Matter of Brundage*, further examination of which by this court is not foreclosed by reason of its affirmance by the Appellate Division and Court of Appeals, since both were without opinion and the ultimate devolution of the property was undoubtedly correctly adjudicated.

As has been heretofore noted, to constitute a demonstrative legacy, the gift must be general in the sense that it is payable out of any assets of the estate indiscriminately and it must be *charged on* a specific fund.

Its resulting characteristic is that if the fund proves insufficient for payment, resort may be had to the general assets of the estate for any deficiency, on a par with general legacies.

With all due deference to the learned courts which made these decisions, it seems entirely obvious that these and similar gifts of or from the remainders of trust funds possess no single one of these characteristics. They are express gifts of the whole or parts of separate and distinct things, namely, the remainders of the funds which the respective testators direct to be segregated from their estates as a whole, for the primary benefit of the life tenants, and by no possible interpretation of language can it ever be held that they are solvable from the general assets of the respective estates. The original erection of such a fund *is* so payable and in the usual case is properly classifiable as a mere general legacy subject to abatement on ordinary principles, but after that segregation and possible abatement has occurred, the fund is a thing apart from the general estate and in the ordinary case comes into the hands of a distinct fiduciary, namely, the trustee, and constitutes in essence an entirely separate estate. In the *Brundage* case this preliminary abatement had occurred.

This principle of distinctiveness is clearly demonstrated in the two Court of Appeals decisions of *Mills* v. *Smith* (141 N. Y. 256, 262) and *Buffalo Trust Co.* v. *Leonard* (154 id. 141), and the reviewing determination of the Appellate Division for the First Department in *Farmers' L. & T. Co.* v. *McCarthy* (128 App. Div. 621). In the *Buffalo* case the estate was originally sufficient to pay all legacies. Prior to satisfying or setting up funds for the payment of prior benefactions, the executor paid the residuary legatee a part of the sum to which, on the basis of all of the assets of the estate, he would have been entitled. He then committed a devastavit and absconded. The unpaid preferred legatees were permitted to recover from the residuary legatee. The actual result in the *McCarthy* case was similar. *Mills* v. *Smith*, on the other hand, was based on a will which directed the erection of a trust fund and the gift of the balance of the general estate to residuary legatees. The fund was erected and the balance of the estate distributed, after which the executors and trustees squandered the assets of the trust, and the remainderman of the trust in this action sought to recover from the residuary legatees an amount sufficient to make good the loss. In denying a recovery, the court said (at p. 262): " This action is simply an attempt to fasten upon the distributees of testator's residuary estate the responsibility for the subsequent default of the executors, as trustees for plaintiff's father. That cannot be done. Where the loss of a fund is due to the waste,

or misconduct, of the executor and trustee, he and his estate alone can be looked to. No claim for contribution arises against residuary legatees in such a case. They are liable to refund in a case where, having been paid from the estate, it is discovered that there is a deficiency of assets for distribution under the will, caused by the diminution of the estate through the premature payment of legacies."

The designations of the remaindermen in the *Brundage* and *Low* cases as demonstrative legatees are obviously incompatible with this result, since if such were their character, remaindermen of a trust would be entitled, at any time, to share on an equality with other general legatees of the estate and in preference to its residuary legatees, with the result that their failure at any time to receive specific sums given them from the remainder of the trust would result in obligations upon the general legatees to make contribution from or upon the residuary legatees to repay sums which they might have received a score or more of years before.

As a matter of strict law and logic, it must be held that a trust fund, when erected, becomes and thereafter continues as a separate estate, the rights in which are ascertainable only from the portion of the will by which it is created unless such clause fails to make complete distribution of all its parts, in which event the portion undisposed of will pass in the manner otherwise directed in the will or as intestate property, as the case may be. If these remainder rights must be pigeon-holed and classified, they more nearly correspond to the definition of a specific bequest as applied in *Crawford* v. *McCarthy* (159 N. Y. 514) than to any other description, but in this connection as in the general questions hereinbefore considered, the entire opinion in that case and not merely the portion on page 518 must be read.

The application of the principles reviewed to the case at bar will be obvious. The order of payment on the facts disclosed will be:

1. Funeral expenses to a reasonable sum as hereinbefore defined.

2. Administration expenses including executors' commissions at the statutory rate.

3. The outright legacy of $5,000 to the widow, the trust fund of $225,000 of which she is the life tenant and the legacies to the physicians.

4. The excess of the fund of $65,000 for burial expenses, erection of a mausoleum, etc., which has not been expended under " 1," *supra*, the trust fund for the life of Joshua Smallman and the general legacies.

Abatement within the numbered classes will be *pro rata*.

The remainder of the trust fund for Joshua Smallman will be used in paying deficiencies in the foregoing, in order of classes.

The remainder of the trust fund for the widow will be paid without abatement to Yale University, on the termination of her life estate.

In case any interested party desires to present evidence on the question of the dependency of Joshua Smallman within the principles hereinbefore stated, or to the effect that there was no property in which the widow had a dower interest and that she was not dependent upon testator and the benefactions provided for her in the will, these matters may be brought on for hearing on five days' notice.

Proceed accordingly.