In the Matter of the Estate of SIGMUND HAIMAN, Deceased.

Surrogate's Court, New York County, November 27, 1937.

*Elias Lieberman*, for the estate of Sigmund Haiman, deceased.

*Frederick L. Weisler*, for the respondent Stella Haiman, widow and one of the executors.

*David Lang*, for Abraham L. Bilchick, one of the executors.

*Kosch, Lewis & Reuben*, for the petitioner Rose Bilchick.

*Blum & Jolles*, for the Polish Consulate.

*Louis Waldman*, for the Rand School.

FOLEY, S. This is a proceeding for the construction of the will. In general there is presented for determination the effectiveness of certain gifts made to the wife, the question of the intent of the testator to favor her by priority over other beneficiaries, and the question of the abatement of the legacies caused by the deficiency of general assets applicable to funeral, administration expenses and other charges.

The will is inartificially and loosely drawn, but a careful consideration and analysis of its terms and of the condition of the interests of the testator at the time of its execution and at the date of his death make possible the ascertainment of his intentions.

The testator was an insurance broker. He died on April 26, 1934. He left general assets consisting of cash in bank and other personal property of the value of $3,956.97. He left also a $5,000 policy of group insurance upon his life, the proceeds of which actually yielded $2,863.76. He left income in the nature of commissions collectible over a period of nine years, to which he became entitled upon insurance written by him in his lifetime. These prospective commissions are estimated to be of the value of $13,429. They are referred to in his will as "renewals." The funeral, administration expenses and other obligations of the estate aggregate $7,578.10. By reason of the insufficiency of the general assets (exclusive of the insurance and the "renewals"), there has resulted an estimated deficit in the sum of $3,621.13.

In so far as they are pertinent to the questions for interpretation, the terms of the will provide as follows:

"*Fifth.* It is my desire that my beloved wife Stella Haiman be economically independent to some extent at least, if possible. In view of the fact that my Estate consists of life insurance policies of about Thirty-six thousand dollars ($36,000) and renewals from my insurance business for nine (9) years, I have done the following for the protection of my wife: I am entering into an agreement with the Equitable Life Assurance Society, by the terms of which I am providing an income for my wife out of Twenty-eight thousand

dollars ($28,000) of my life insurance proceeds, the interest of which will be paid to my wife for a period of three (3) years, at the expiration of which she may exercise certain options provided for in my agreement with the Equitable Life Assurance Society."

· Two days after the execution of the will the testator entered into the agreement with the Equitable Life Assurance Society, which he mentioned in the fifth paragraph. The testator further directed, in the same paragraph, the payment to his wife of the sum of thirty dollars weekly " out of the income derived from my renewals " or from any other source except as specifically provided for in the will, for a period of three years after his death. He further directed that such payments should cease if she remarried prior to the termination of that period. These weekly benefits were given in addition to her interest in the proceeds of the insurance policies covered by the agreement.

He next provided, in paragraph sixth, that three years after his death and after the payment of thirty dollars per week to his wife, there should be paid out of his " renewals " fifteen dollars per month to his brother, Yosel Haiman, seventy-five dollars per year for five years to the Rand School of Social Science, and the balance of the " renewals " to his eight brothers and sisters in certain definite proportions.

By paragraph seventh he directed a redistribution of the " renewals " after the expiration of such three-year period, at the rate of twenty-five per cent to his wife so long as she remained unmarried, and seventy-five per cent to his sisters and brothers in the same proportions as fixed in paragraph sixth. Should his wife remarry, the total " renewals " receivable were to be distributed among his brothers and sisters.

Having made disposition of his renewal commissions and of his insurance in the preceding paragraphs of the will, the testator proceeded, under paragraph eighth, to distribute the balance of his estate as follows:

" In view of the fact that my Estate consists of more than twenty-eight thousand dollars ($28,000) out of which amount I provided an income for my wife, I direct that the excess thereof shall be distributed by my trustees as follows:

" (a) Five thousand dollars ($5,000) to my beloved niece Ida Bilchick, * * * .

" (b) Two thousand five hundred dollars ($2,500) to my beloved niece Rose Bilchick, * * * .

" (c) One thousand dollars ($1,000) to my beloved nephew Samuel Haiman."

Contemplating that the general assets of his estate might not be sufficient to satisfy the legacies bequeathed under paragraph eighth to his nieces and nephew, he provided for this contingency in subdivision (d) in the following language:

" (d) Should my Estate be insufficient to cover the specific bequests made herein by me to my nieces and nephew, then they are to receive the balance of my insurance in excess of the Twenty-eight thousand dollars ($28,000) to the extent of the bequests made to them, in the following proportions:

" Six-tenths (6/10) to Ida Bilchick

" Three-tenths (3/10) to Rose Bilchick

" One-tenth (1/10) to Samuel Haiman."

In subdivision (e) of the same paragraph he bequeathed the sum of $500 to Dorothy G. Elstein, to be paid " regardless of the sufficiency of my estate for other bequests made," and in paragraph ninth directed a division of the balance of his estate into twelve equal parts and distribution of such parts in certain fractional shares among his brothers and sisters.

At the date of the execution of the will the testator owned five policies of insurance on his own life issued by the Equitable Life Assurance Society of the aggregate face value of $32,000. There were then outstanding loans against the policies which reduced their net value to the sum of $28,631.56. These policies were the subject of the trust agreement above referred to made between the testator and the insurance company two days after the execution of his will. Thereafter the testator withdrew from the policies on deposit under the agreement one of the policies in the sum of $3,000. By the designation of a new beneficiary he made this policy payable directly to his niece, Ida Bilchick. The widow, therefore, became the beneficiary upon his death of the proceeds of the remaining insurance policies of the face value of $29,000 which, after deduction of the indebtedness against them, yielded in actual proceeds $25,902.51.

The following questions are presented for determination: (1) Is the widow entitled to the difference between $25,902.51, actually paid as the proceeds of the insurance policy deposited under the agreement with the insurance company, and the amount of $28,000, specified in the will as the amount of insurance set aside for her benefit; and (2) what fund or funds must abate to meet the deficit of $3,621.13 of general assets applicable to the payment of funeral, administration expenses and other charges?

(1) It is contended by the widow that she is entitled to receive $28,000, whether from the proceeds of the insurance policies or

from any other funds, in addition to the weekly payments out of the " renewals;" that she is a preferred legatee over all other legatees to such extent, except as to the legacy of $500 under paragraph eighth to Dorothy G. Elstein, an employee, and that, having received only $25,902.51 of insurance proceeds, she is entitled to a balance of $2,097.49 from the assets of the estate. This contention is opposed by the other beneficiaries, who maintain that she is entitled only to the sum of $25,902.51, and that whatever other insurance the testator had, not within the trust agreement, was intended to pass to the legatees named in paragraph eighth of the will. I do not agree with the latter contention.

The testator's dominant desire was to create for his widow a fund which, as he so explicitly expressed in paragraph fifth of his will, would make her " economically independent to some extent." That economic independence, in his mind, depended upon the establishment for her of a fund constituting the proceeds of at least $28,000 of insurance and weekly payments of thirty dollars out of the renewal commissions. That purpose of the testator must be effectuated. Although the will does not, in either formal or express terms, bequeath to the widow any sum which would make up the deficit of $2,097.49, there are sufficiently strong expressions in the will of what the testator actually intended to sustain a gift to the widow of such amount by necessary implication. The indicia of such intent are found (a) in paragraph fifth, where the testator stated that for the protection of his wife he is entering into an agreement to provide for her an income out of $28,000 of life insurance proceeds; (b) in paragraph eighth, where he refers to the fact that his estate consists of more than $28,000, out of which he has provided an income for his wife, and directs the excess only to be distributed to other nieces and a nephew; and (c) in the same paragraph, subdivision (d), where he specifically provides: " Should my estate be insufficient to cover these specific bequests made herein by me to my nieces and nephew, then they are to receive the balance of my insurance *in excess of $28,000.*" These provisions, in my opinion, are clear evidence of an intent to prefer the widow over the other beneficiaries, and that she is entitled to receive the benefit of insurance to the extent of $28,000 without abatement. Only the excess of insurance over that amount was the subject of the bequests to the other legatees in paragraph eighth. Necessarily, there could not be any excess unless the widow first received her full share of $28,000. She has received only $25,902.51. She is entitled to the additional sum of $2,097.49 as a specific bequest of that amount out of the proceeds of the policy of group insurance.

The testator, by his reference " to my insurance," specifically included the proceeds of the group insurance as an asset of his estate. It is generally recognized that a devise or bequest by implication is not favored, but where the testator's declared purpose is so strong as to leave no hesitation in the mind of the court and to permit of no other reasonable inference, a gift by implication will be upheld. (*Bishop* v. *Bishop*, 257 N. Y. 40; *Dreyer* v. *Reisman*, 202 id. 476; *Matter of Hoffman*, 201 id. 247; *Close* v. *Farmers' Loan & Trust Co.*, 195 id. 92; *Mee* v. *Gordon*, 187 id. 400; *Matter of Moore*, 152 id. 602.) My determination here, moreover, is consistent with the general rule approved by the Court of Appeals that a legacy to a widow must be given preference. (*Matter of Gabler*, 155 Misc. 418; affd., 242 App. Div. 797; affd., 267 N. Y. 559.)

In furtherance of the testator's plan to benefit his widow by priority over other beneficiaries, the fund of $28,000 given to her is not required to bear any part of the deficit of funeral, administration expenses and other charges, and she is entitled to that fund free and clear of any deduction for such purposes.

(2) The determination of the second question as to what fund or funds are chargeable with the payment of the funeral, administration and other charges, because of the failure of general assets applicable thereto, is dependent upon the nature of the legacies bequeathed to the other beneficiaries in the will. There are two funds available for that purpose, (1) the renewal commissions, estimated to approximate $13,429, and (2) the proceeds of the policy of group insurance, of the sum of $2,863.76. From the latter amount, however, there must first be deducted, in accordance with my determination hereunder, the sum of $2,097.49 to which the widow has been held to be entitled, leaving a balance of $766.27 applicable to the payment of the charges. There can be no doubt that the gift of the renewal commissions to the legatees under paragraph sixth and the gift of the excess insurance to the legatees under paragraph eighth are specific bequests. They are not general legacies. Under the distinctive language of the will they are not demonstrative legacies. They are specific legacies in fixed pecuniary or fractional amounts. (*Crawford* v. *McCarthy*, 159 N. Y. 514; *Matter of Smallman*, 138 Misc. 889.) Because of the failure of general assets, both funds, since they are of the same character, must abate ratably to the extent of the deficit in the proportion that each fund bears to the aggregate of the two funds.

Upon the further questions of construction, I hold: (a) After deduction of the proportionate share of the funeral expenses, administration expenses and other charges, the renewal commissions

are payable to the persons in the order named by the testator in his will, as follows: *First*, to the extent of thirty dollars per week to the widow as a first preferred legatee during the primary period of three years after the testator's death unless sooner terminated by her remarriage; *second*, the sum of fifteen dollars per month until the expiration of such primary period to his brother, Yosel Haiman, who is clearly preferred as a dependent relative to the other beneficiaries named; *third*, and if there are sufficient renewal commissions remaining after the payment of the first two preferred amounts, the sum of seventy-five dollars per year to the Rand School of Social Science, and, *finally*, the balance of renewals, if any, accruing during the period must be paid to the brothers and sisters of the testator in the proportions fixed by him. (b) Upon the expiration of three years from the date of the testator's death and in accordance with the priority to which the widow is entitled, twenty-five. per cent of the "renewals" become payable to her. Seventy-five per cent of the "renewals" are then distributable to his brothers and sisters, as provided in the will. Against the latter percentage of "renewals," however, the legacy of seventy-five dollars per year to the Rand School of Social Science is primarily chargeable and must be paid for a period of two years. (c) The legacy to Dorothy G. Elstein, under paragraph eighth, is a preferred legacy, and was properly paid out of the general assets of the estate. (d) The specific fund of excess insurance of $766.27, after deduction of the proportionate share of the charges against it, is payable in the fractional shares of nine-tenths to the testator's niece, Rose Bilchick, the petitioner herein (Ida Bilchick having assigned her six-tenths interest to her), and one-tenth to his nephew, Samuel Haiman. (e) The legatees named in paragraph ninth of the will are residuary legatees, but, since there is no residue, their legacies never became effective.

Submit decree on notice construing the will accordingly.