In the Matter of the Estate of ELLA A. KILBORN, Deceased.

Surrogate's Court, Westchester County, March 8, 1938.

*Hardling & Scharf* [*Philip Scharf* of counsel], for the executors.

*Stewart & Stevens*, for Willey T. Kilborn, legatee.

*Timothy A. McCarthy*, special guardian.

MILLARD, S. On or about January 22, 1937, Lyman W. Atwater filed his account of proceedings as executor under the will of this decedent, together with a petition praying for the judicial settlement thereof and for a construction of paragraph "first" of the will. After a notice to all interested parties, a hearing was had, and on October 14, 1937, the former surrogate filed his decision construing the paragraph of the will in question. A decree, in conformity with said decision, was entered on December 21, 1937.

During the pendency of the proceeding, and before any decision was rendered therein, Lyman W. Atwater, the petitioning executor, died. His death occurred on September 4, 1937. Thereafter,

Constance A. Ayles and Lawrence W. Atwater were appointed as administrators with the will annexed of this decedent. Said administrators *c. t. a.* then instituted two proceedings, the *first*, to revive and continue said construction proceeding by bringing in additional parties thereto, and *second*, for an order vacating the decision and interlocutory decree heretofore mentioned. Both applications were granted and orders were entered on January 18, 1938. Simultaneously therewith a citation was issued bringing in, as parties to the construction proceeding, Edith R. Atwater, as executrix of the will of Lyman W. Atwater, the deceased executor; Constance A. Ayles and Lawrence W. Atwater, as administrators *c. t. a.* of this decedent, and the Ætna Casualty and Surety Company as surety on their bond. At the hearing had upon this application, all of the interested parties stipulated upon the record that the former decision and decree, dated respectively, October 14, 1937, and December 21, 1937, be vacated; that the matter be heard *de novo*, and that the question of construction of paragraph numbered " first " of the will be submitted to the court for decision upon the papers, briefs and record adduced upon the petition of the deceased executor.

The will is holographic. It was drafted on the customary printed form prepared for that purpose and consists of three clauses or paragraphs. Paragraphs " first " and " second " provide as follows:

" *First*, after my lawful debts are paid, I give to *Willey T. Kilborn*, Derby, Vt., or his heirs, the sum of sixteen thousand dollars ($16000.00), said amount being included in the loan to Christopher C. Collie, secured by his personal note for $25000.

" *Second, to The Home for Aged Women*, Burlington, Vt., the sum of five thousand dollars ($5000) *to The First Church* (Congregational), Burlington, Vt. the sum of five thousand dollars ($5000) *to The Salvation Army*, New York City, the sum of two thousand dollars ($2000) *to The University of Vermont*, Burlington, Vt., the sum of one thousand dollars ($1000) *to The Howard Relief Society*, Burlington, Vt., the sum of five hundred dollars ($500) *to The Cemetery Dep't.*, City of Burlington, Vt., the sum of two hundred dollars ($200)."

Paragraph " third " bequeaths the remainder of the estate in equal shares among twelve cousins of decedent who are designated by name.

Petitioners contend that the legacy to Willey T. Kilborn, in paragraph " first " of the will, is specific and, therefore, payable only out of the proceeds of the note referred to therein. The legatee contends that the legacy is demonstrative and that he

may look to the general assets of the estate for payment in the event of the failure of the designated fund.

It appears from the petition that Willey T. Kilborn was the brother of decedent's husband, the latter having died sometime prior to the execution of her will. The note for $25,000, made by Christopher C. Collie and referred to in paragraph " first " of the will, is dated May 6, 1932, and made payable twenty-five years from that date. The residuary legatees are cousins, in various degrees, to the decedent.

Certain well-defined rules have been established with respect to the nature of testamentary gifts. In the leading case of *Crawford* v. *McCarthy* (159 N. Y. 514) the court defined the various forms of legacies as follows: " A general legacy is a gift of personal property by a last will and testament, not amounting to a bequest of a particular thing or money, or of a particular fund designated from all others of the same kind. A specific legacy is a bequest of a specified part of a testator's personal estate distinguished from all others of the same kind. *A demonstrative legacy is a bequest of a certain sum of money, stock or the like, payable out of a particular fund or security.* For example, the bequest to an individual of the sum of $1,500 is a general legacy. A bequest to an individual of the proceeds of a bond and mortgage, particularly describing it, is a specific legacy. A bequest of the sum of $1,500, payable out of the proceeds of a specified bond and mortgage, is a demonstrative legacy. A demonstrative legacy partakes of the nature of a general legacy by bequeathing a specified amount, and also of the nature of a specific legacy by pointing out the fund from which the payment is to be made; *but differs from a specific legacy in the particular, that if the fund pointed out for the payment of the legacy fails, resort may be had to the general assets of the estate.*"

The gift to Willey T. Kilborn was of a specified sum of money payable out of a designated fund, *i. e.,* the $25,000 note. What was the intention of the testatrix as to the payment of this legacy? Was he to receive it in any event or only out of the proceeds of the note if and when the same should be collected? The will contains no express terms of preferment. Undoubtedly, testatrix intended that all legacies would be paid in full, thereby conferring a real benefit upon all of the legatees.

The courts are inclined to consider legacies as general rather than specific where the language used will permit of such construction. (*Giddings* v. *Seward*, 16 N. Y. 365; *Pierrepont* v. *Edwards*, 25 id. 128; *Matter of Neil*, 238 id. 138.)

In *Pierrepont* v. *Edwards* (*supra*) the court said as follows: " It will be seen, by an examination of them [the authorities]

that no positive rule of ready application to every case can be laid down, but that each case will depend upon a consideration of all the material provisions of the will to be construed, and of the extrinsic circumstances respecting the testator's family and estate, which may be fairly brought to bear upon the question of intent. The leading principle of the cases is, that when the testator bequeaths a sum of money, or, which is the same thing, a life annuity, in such a manner as to show a separate and independent intention that the money shall be paid to the legatee at all events, that intention will not be permitted to be overruled, merely by a direction in the will that the money is to be raised in a particular way, or out of a particular fund."

To the same effect is *Matter of Neil (supra)*, where the court said: " It is the testator's mind we seek to read. * * * To interpret this intent we may consider the circumstances known to him when the will was made, and we may search the will itself for any language that may give us light."

In the instant case I am inclined to view the reference by testatrix to the Collie note merely as indicating a possible source from which the legacy to Willey T. Kilborn might be paid. This loan had been made by her only about one month prior to the execution of her will. No doubt the transaction was still fresh in her mind and she considered it a fund out of which this, as well as other legacies, might some day be paid. She employed the language of a layman in expressing her desire to make a gift to her brother-in-law. Nothing in the will nor in the surrounding circumstances would give rise to the belief that she desired to place any limitations upon that gift.

Petitioners urge that the phrases " a portion of " and " included in " are synonymous terms of expression. They point out that in *Davis* v. *Crandall* (101 N. Y. 311) a legacy of " the sum of $243.92, *a portion of* the debt due me from the said James Davis secured by his notes," was held to be a specific legacy. (Italics mine.) By analogy, they seek to have the phrase " included in," as used by this testatrix in paragraph " first " of her will, construed as having the same meaning as that given to the words " a portion of " in the case last above cited. I do not think this contention is well taken. The phrase " a portion of " may be defined as a component part of a given substance which may or may not be separated from the whole. The phrase " included in " is synonymous with " contained in."

In *Giddings* v. *Seward* (16 N. Y. 365) the following bequest was held to be demonstrative: " I give and bequeath unto my beloved mother, Antha Seward, the sum of twelve hundred dollars

and interest on the same *contained in* a bond and mortgage given to me by Orren W. Seward and Caroline his wife, and dated the third day of January, 1847." (Italics mine.)

In my opinion the gift of $16,000 to Willey T. Kilborn, contained in paragraph " first " of the will, is a demonstrative legacy (*Giddings* v. *Seward, supra; Crawford* v. *McCarthy, supra; Matter of Smallman*, 138 Misc. 889), and is payable out of the general assets of the estate in the event of the failure of the primary fund designated for that purpose.

There is no evidence before the court as to the value of the $25,000 note other than a statement in the account that its value is unknown. In order to avoid a multiplicity of proceedings, proof may be taken in the accounting proceeding as to the value of said note.

Submit decree accordingly.